

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-29-1998

# Waterfront Comm NY v. Elizabeth-Newark

Precedential or Non-Precedential:

Docket 98-6127

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Waterfront Comm NY v. Elizabeth-Newark" (1998). *1998 Decisions.* Paper 286.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/286

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 29, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-6127

WATERFRONT COMMISSION
OF NEW YORK HARBOR,
on behalf of itself and of the State of New Jersey

v.

ELIZABETH-NEWARK SHIPPING, INC.,
        Appellant

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 96-cv-03662)
(District Judge: Hon. William H. Walls)

Argued December 14, 1998

Before: SLOVITER and COWEN, Circuit Judges,
and OBERDORFER, District Judge*

(Filed December 29, 1998)

Scott R. Johnston (Argued)
Poles, Tublin, Patestides & Stratakis
New York, New York 10006

 Attorney for Appellant

_____

*Hon. Louis F. Oberdorfer, United States District Court for the District
of Columbia, sitting by designation.

David B. Greenfield (Argued)
Gerald P. Lally
Waterfront Commission of New York
Harbor
New York, N.Y. 10004

 Attorneys for Appellee

OPINION OF THE COURT

SLOVITER, Circuit Judge.

I.

At issue in this case is the application of regulatory provisions of the Waterfront Commission Compact ("the Compact") to a company that transports by water certain merchandise, primarily trucks and automobiles, that it claims it owns. The Compact is an interstate agreement entered into between New York and New Jersey with the consent of Congress. See N.J. Stat. Ann.S 32:23-1 et seq.; N.Y. Unconsol. Law S 9801 et seq. (McKinney); Waterfront Commission Compact, ch. 407, 67 Stat. 541 (1953). The Compact, which regulates the employment of waterfront labor in the Port of New York district, established the Waterfront Commission of New York Harbor ("the Commission"). See N.J. Stat. Ann. S 32:23-7.

The District Court granted summary judgment in favor of the Commission and permanently enjoined appellant, Elizabeth-Newark Shipping ("ENS") from employing unregistered waterfront labor. The court also assessed statutory penalties and fees against ENS. ENS appeals.

II.

ENS purchases cars and trucks in the United States and transports them to Haiti, where the vehicles are then sold. In late 1994, ENS used Construction and Marine Equipment Co. ("CME") as a stevedore to load vehicles onto ships that ENS chartered. Because CME was not a stevedore licensed pursuant to N.J. Stat. Ann. S 32:23-12,

2

as required by the Compact, the District Court, following suit by the Waterfront Commission, enjoined CME from acting as a stevedore. See Waterfront Comm'n of N.Y. Harbor v. Construction & Marine Equip. Co., 928 F. Supp. 1388 (D.N.J. 1996). ENS thereupon moved its loading operations to its own facility in Elizabeth, New Jersey, where it used its own employees to load the goods onto ships, chartered by ENS, bound for Haiti. The parties dispute whether ENS actually owned all of the goods that it shipped. It is undisputed that the labor that ENS used in loading its ships was not registered pursuant to the Compact.

After an investigation, the Commission, in a series of letters to ENS, advised it that although ENS was not required to hold a stevedore's license, the company could not legally employ unlicensed and unregistered waterfront labor for the loading of the ships. When ENS failed to conform its practices as directed, the Commission brought suit in the United States District Court for the District of New Jersey against ENS, seeking injunctive relief, statutory penalties, and assessments. The District Court granted a preliminary injunction in favor of the Commission in September 1996. In May 1998, the District Court granted the Commission's motion for summary judgment and permanently enjoined ENS from employing unlicensed pier superintendents and unregistered longshoremen for the loading of its ships. See Waterfront Comm'n of N.Y. Harbor v. Elizabeth–Newark Shipping, Inc., 3 F. Supp. 2d 500 (D.N.J. 1998). ENS timely filed this appeal.

Subject–matter jurisdiction exists under 28 U.S.C. S 1331. Although the Compact is a creature of state legislatures, it is federalized by virtue of congressional approval pursuant to the Compact Clause of the Constitution, art. I, S 10, cl. 3. See Carchman v. Nash, 473 U.S. 716, 719 (1985) ("[A] congressionally sanctioned interstate compact within the Compact Clause . . . is a federal law subject to federal construction."); Cuyler v. Adams, 449 U.S. 433, 440 (1981) ("[W]here Congress has authorized the States to enter into a cooperative agreement, and where the subject matter of that agreement is an appropriate subject for congressional legislation, the

3

consent of Congress transforms the States' agreement into federal law under the Compact Clause.").

We have appellate jurisdiction under 28 U.S.C. S 1291. Our review of the District Court's grant of summary judgment is plenary.

III.

The Compact was enacted to eliminate corrupt hiring practices on the New York Harbor waterfront. See Hazelton v. Murray, 21 N.J. 115, 120-23, 121 A.2d 1, 3-5 (1956) (reviewing legislative history). To this end, the Compact regulates the employment of waterfront labor by, inter alia, requiring that stevedoring companies and pier superintendents be licensed by the Commission in order to perform their functions in the Port of New York District,1 and that laborers be placed on the Commission's register of longshoremen before they can load and unload waterborne freight in the district. See N.J. Stat. Ann.SS 32:23-19 (stevedores), 32:23-12 (pier superintendents), 32:23-27 (longshoremen). The Commission may refuse, revoke or suspend registration to longshoremen with certain criminal backgrounds or who constitute a danger to public peace and safety. N.J. Stat. Ann. SS 32:23-29, -31, and -45 to -51. The Commission may seek civil penalties and injunctive relief for violations of the Compact's requirements. See N.J. Stat. Ann. SS 32:23-89 (civil penalties), 32:23-90 (civil enforcement).

The parties disagree as to whether ENS falls within the regulatory purview of the Compact. The principal dispute between the parties concerns whether ENS is a "carrier of freight by water" within the intendment of the Compact, and thus subject to its requirements with respect to waterfront labor. The parties are, however, united in their disagreement with the reasoning of the District Court, which concluded that the controversy could be decided without reference to that term.

_____

1. The geographical boundaries of the Port of New York District are described in N.J. Stat. Ann. S 32:1-3. The area covered includes the New York and New Jersey sides of the New York Harbor.

4

A.

The Compact provides that "no person shall employ another to work as a longshoreman within the Port of New York district unless at the time such other person is included in the longshoremen's register." N.J. Stat. Ann. S 32:23-27. With respect to pier superintendents, the Compact directs that "no person shall act as a pier superintendent or as a hiring agent within the port of New York district without first having obtained from the commission a license." N.J. Stat. Ann. S 32:23-12. To determine whether a person is a longshoreman or a pier superintendent, and thus employable only under the specified conditions, it is necessary to consult the statutory definitions.

The Compact defines "pier superintendent" as

> any natural person other than a longshoreman who is employed for work at a pier or other waterfront terminal by a carrier of freight by water or a stevedore and whose work at such pier or other waterfront terminal includes the supervision, directly or indirectly, of the work of longshoremen.

N.J. Stat. Ann. S 32:23-6.

The Compact defines "longshoreman" in relevant part as

> a natural person, other than a hiring agent, who is employed for work at a pier or other waterfront terminal, either by a carrier of freight by water or by a stevedore,
>
> (a) physically to move waterborne freight on vessels berthed at piers, on piers or at other waterfront terminals . . . .

N.J. Stat. Ann. S 32-23-6. Under both of those definitional sections, the employee, whether "longshoreman" or "pier superintendent," must be employed by either a"stevedore" or a "carrier of freight by water."

The Compact also contains a number of "supplementary definitions" that were enacted in 1969. Among these is a further definition of "longshoreman":

5

"Longshoreman" shall also include a natural person, other than a hiring agent, who is employed for work at a pier or other waterfront terminal

 (a) either by a carrier of freight by water or by a stevedore physically to perform labor or services incidental to the movement of waterborne freight on vessels berthed at piers, on piers or at other waterfront terminals . . . or

 (b) by any person physically to move waterborne freight to or from a barge, lighter or railroad car for transfer to or from a vessel of a carrier of freight by water which is, shall be, or shall have been berthed at the same pier or other waterfront terminal, or

 (c) by any person to perform labor or services involving, or incidental to, the movement of freight at a waterfront terminal as defined in subdivision (10) of this section.

N.J. Stat. Ann. S 32-23-85. There is no comparable supplementary definition for "pier superintendent."

The District Court, relying on subsection (c) of this supplementary definition of longshoreman, as well as a New Jersey Supreme Court decision interpreting this provision, ruled that there was no need to determine whether ENS qualifies as a "carrier of freight by water" because " `the 1969 amendments eliminated from the definition of longshoreman [and hiring agent] the requirement that a person be employed by a carrier of freight by water.' " Elizabeth-Newark Shipping, Inc., 3 F. Supp. 2d at 502-03 (quoting Waterfront Commission of N.Y. Harbor v. Mercedes-Benz of North America Inc., 99 N.J. 402, 493 A.2d 504 (N.J. 1985)). The District Court noted that the 1969 amendments did not effect a comparable redefinition of "pier superintendent" but concluded that pier superintendents were "subsumed by the updated definition of `longshoreman.' " 3 F. Supp. 2d at 503. Accordingly, the District Court held that a finding that ENS was a "carrier of freight by water" was unnecessary with respect to the question whether ENS was required to utilize licensed pier superintendents for the supervision of longshore workers.

6

In their briefs, both parties argue that the District Court erred in its legal conclusion that the 1969 amendment to the definition of "longshoreman" obviates the need to determine whether ENS is a "carrier of freight by water" as a prerequisite for application of the Compact's rules regarding pier superintendents and longshoremen. We agree.

The New Jersey Supreme Court's decision in Mercedes-Benz provides a elucidative discussion of the background of the 1969 amendments. In that case, the Commission sought to enjoin Mercedes-Benz from employing unregistered hiring agents and longshoremen who prepared automobiles that had been imported by ocean carriers for delivery to dealers. The trial court, as well as the intermediate appellate court, had concluded that the Compact's requirements did not apply to Mercedes-Benz because the employees did not work at a pier or other waterfront terminal and did not involve the movement of freight. The Supreme Court of New Jersey reversed. The Court noted that before the 1969 amendments, the Compact required registration only for those longshoremen "who physically handled waterborne cargo on the piers and in the holds of ships but overlooked those who performed tasks incidental, but nevertheless essential, to the smooth flow of the freight." 99 N.J. at 411, 493 A.2d at 509 (quoting Waterfront Commission of New York Harbor, Annual Report – 1968/69 at 11). After the industry turned to containerization, contractors and companies could handle cargo in warehouses located away from the piers.

The containerization process involves the loading of freight into large metal boxes, which are in turn loaded onto a truck frame or railroad car and then raised onto a ship. See N.L.R.B. v. International Longshoremen's Ass'n, AFL-CIO, 473 U.S. 61, 64 (1985). The advent of the containerization phenomenon created a problem for the Commission in that the contractors and workers who loaded containers were not "stevedores" or "longshoremen" as then defined under the Compact because they did not load ships berthed at piers, but rather loaded containers that later were hoisted onto ships; thus the Compact "overlooked those who performed tasks incidental, but

7

nonetheless essential to, the smooth flow of the freight." Mercedes-Benz, 99 N. J. at 411; 493 A.2d at 509. This left new positions uncovered, subject to infiltration by those very elements the Compact was designed to exclude.

Consequently, acting on the Commission's proposal, the legislatures of the two states expanded the definition of longshoreman in 1969 to bring these workers within the Commission's jurisdiction. Mercedes-Benz, 99 N.J. at 413, 493 A.2d at 510. The legislation was amended to cover, in addition to traditional longshore workers who load goods directly onto ships, those workers who handle freight ultimately destined for ships but which was loaded into containers at locations other than piers. Id. It effected this change by including as longshoremen those who work for entities other than stevedores or carriers of freight by water, but who nonetheless handle freight that will be or was carried by a carrier of freight by water. When the Mercedes-Benz Court stated that "the 1969 amendments eliminated from the definition of longshoreman the requirement that a person be employed by a carrier of freight by water or by a stevedore," id. at 413, it explained that change as representing "a means of asserting jurisdiction over employees who had been removed from pier employment because of misconduct but who subsequently returned to the waterfront to work on cargo in warehouses and consolidating depots." Id. at 413-14, 493 A.2d at 510. In fact, the Mercedes-Benz Court then stated that its consideration of "the policy of the [Compact] in its entirety, as disclosed by its legislative history," id. at 414, 493 A.2d at 510, led it to conclude that "those employee of [Mercedes-Benz] who performed services on vehicles `incidental to their movement' as freight were subject to registration as longshoreman and that the persons by whom they were selected for employment were subject to licensing as hiring agents." Id. at 416-17, 493 A.2d at 512.

This history bears out the Commission's argument before us that "[t]his case has nothing to do with the waterfront activities which gave rise to the 1969 Amendments . . . but is concerned with `traditional' waterfront operations." Appellee's Brief at 8. In contrast to the issue that was before the Court in Mercedes-Benz, we are concerned here

8

with employees who are performing traditional longshoremen waterfront activity.

As noted above, the district court ruled that the 1969 amendments redefined "longshoreman" so as to eliminate the employment by a "carrier of freight by water" as a prerequisite for falling within the regulatory authority of the Compact. We focus on subsection (c) of the supplementary definitions of "longshoreman" in S 32:23-85, as it is plain that subsections (a) and (b) contain the "carrier of freight by water" qualification. Subsection (c) defines "longshoreman" broadly as "a natural person, other than a hiring agent, who is employed for work at a pier or other waterfront terminal . . . by any person to perform labor or services involving, or incidental to, the movement of freight at a waterfront terminal as defined in subdivision (10) of this section." Significantly, this definition specifically limits the definition of "longshoreman" to one who moves "freight" as defined in subsection (10). That provision reads: " `freight' means freight which has been or will be, carried by or consigned for carriage by a carrier of freight by water." N.J. Stat. Ann. S 32:23-85(10).

Accordingly, we agree with the parties that the term "carrier of freight by water" remains an essential term in the definition of a longshoreman. Even though, under the 1969 amendments, a laborer need not be employed by a carrier of freight by water in order to qualify as a longshoremen, a laborer who "perform[s] labor or services involving or incidental to, the movement of" goods that are, or will be, carried by a carrier of freight by water falls within the definition of a longshoreman.

It follows that the District Court erred insofar as it concluded that the amendments dispensed with the term "carrier of freight by water" as an essential term in that definition. That is, it failed to acknowledge that although the 1969 amendment eliminated the requirement that a longshoreman be employed by a stevedore or carrier of freight by water, the amendment continued to ensure that the Compact's purview extended to those who handle freight "which has been or will be carried . . . by a carrier of freight by water." N.J. Stat. Ann. SS 32:23-85(6)(c) & (10).

9

In sum, the Compact defines "longshoremen" as those laborers who either (1) handle waterborne freight as employees of a "stevedore" or a "carrier of freight by water," N.J. Stat. Ann. S 32:23-6, or (2) handle freight destined for carriage by a "carrier of freight by water" while employed by "any person." S 32:23-85 (c). As the parties agree, ENS is not a stevedore. But as long as the ENS employees hired to load vehicles onto its chartered ships are employees of a carrier of freight by water or are handling freight bound for carriage by such an entity, they must be registered pursuant to the Compact.

Furthermore, as previously pointed out, the 1969 amendment did not change the definition of "pier superintendent." Thus, "pier superintendents" continue to be defined as supervisors of waterfront labor employed by a stevedore or carrier of freight by water. The District Court acknowledged that the 1969 amendment did not broaden the definition of pier superintendent as it did with respect to longshoremen, but concluded that "that vocation is now subsumed by the updated definition of `longshoreman.' " However, it is doubtful that the legislatures would have, by means of a supplementary definition of "longshoreman," undertaken, sub silentio, to render a separate definition in another section of the statute superfluous. But there is no need to decide this question. Even if we assume arguendo that the supplementary definition of "longshoreman" was meant to trump the earlier definition of "pier superintendent," our analysis would not differ. Because the 1969 amendment retains "carrier of freight by water" as an essential term in the definition of "longshoreman," this essential term perforce applies to "pier superintendents" as well.

Therefore, the question that remains for decision is whether ENS is a "carrier of freight by water."

B.

ENS takes the position that it is not a "carrier of freight by water" because it handles only its own goods, and therefore need not hire registered longshoremen or licensed pier superintendents. The Commission responds, arguing

that (1) as a matter of statutory construction, the Compact's requirements apply to companies that handle their own goods, and (2) the record does not support ENS's contention that it handled its own goods.

The Compact defines "carrier of freight by water" as

> any person who may be engaged or who may hold himself out as willing to be engaged, whether as a common carrier, as a contract carrier or otherwise. . . in the carriage of freight by water between any point in the Port of New York district and a point outside said district.

N.J. Stat. Ann. S 32:23-6 (emphasis added).

In ENS's view, this definition should be understood as being confined to carriers for hire--that is, those who carry the goods of another for compensation. Invoking the principle of ejusdem generis,[2] ENS urges that the qualification "whether as a common carrier, as a contract carrier or otherwise" compels the conclusion that the legislation is directed only toward those entities that carry freight for others. It argues that an entity that ships its own goods is sufficiently dissimilar from the kinds of carriers listed in the definition that ejusdem generis principles require us to conclude that the statute excludes those who ship their own goods. This argument fails to persuade.

The principle of ejusdem generis, as this court has emphasized, "is not a rule of law but merely a useful tool of construction resorted to in ascertaining legislative intent. The rule should not be employed when the intention of the legislature is otherwise evident." United States v. Frumento, 563 F.2d 1083, 1090 (3d Cir. 1977).

_____

2. Black's Law Dictionary defines the principle of ejusdem generis thus:

> where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class
> as those specifically mentioned.

Black's Law Dictionary 517 (6th ed. 1990).

The Compact was designed to root out corruption and to improve the conditions under which waterfront labor was employed. The Compact makes the following "Findings and Declarations:"

> The States of New Jersey and New York hereby find and declare that the conditions under which waterfront labor is employed within the Port of New York district are depressing and degrading to such labor, resulting from the lack of any systematic method of hiring, the lack of adequate information as to the availability of employment, corrupt hiring practices and the fact that persons conducting such hiring are frequently criminals and persons notoriously lacking in moral character and integrity and neither responsive or responsible to the employers nor to the uncoerced will of the majority of the members of the labor organizations of the employees . . . .

N.J. Stat. Ann. S 32:23-2.

Accordingly, the Compact undertakes to regulate the employment of waterfront labor through its licensing and registration scheme, a scheme by which those with criminal records are disqualified from holding positions as longshoremen or pier superintendents. N.J. Stat. Ann. S 32:23-14(b) (making conviction of certain crimes grounds for denying license as pier superintendent or hiring agent); N.J. Stat. Ann. S 32:23-29(a) (allowing Commissioner to deny application for inclusion on longshoremen's register based on certain criminal convictions).

In light of the statutory goals, and the means chosen to effect those goals, ENS's proffered interpretation of the definition of "carrier of freight by water" as applying only to those who carry freight belonging to someone else for hire is too restrictive. It is implausible that by using the phrase "whether as a common carrier, contract carrier or otherwise" the drafters of the Compact sought to root out criminality and degrading hiring conditions with respect to laborers who are employed by carriers for hire while excluding those companies who, like ENS, ship their own goods for sale outside of the Port of New York.

12

ENS proffers no reason why the legislatures of New York, New Jersey, and the United States would have done so. Were we to narrow the reach of the statute in the name of ejusdem generis, we would subvert the manifest purpose of the Compact--remedying corrupt and degrading hiring practices within the district. Ejusdem generis should not "be applied to defeat the obvious purpose of the statute or to narrow the targets of Congressional concern.`The rule of "ejusdem generis" is applied as an aid in ascertaining the intention of the legislature, not to subvert it when ascertained.' " Frumento, 563 F.2d at 1090 (quoting Texas v. United States, 292 U.S. 522, 534 (1934)).

If the legislatures that drafted the Compact had intended to restrict the definition of "carrier of freight by water" to businesses that carry freight for others for compensation, the linguistic tools with which to do so were readily available. In fact, as the Commission argues, the Compact's definition of "stevedore" contains the very kind of restriction that ENS argues should be read into the definition of "carrier of freight by water. The Compact, in relevant part, defines "stevedore" as "a contractor (not including an employee) engaged for compensation pursuant to a contract or arrangement with a carrier of freight by water, in moving waterborne freight carried or consigned for carriage by such carrier." N.J. Stat. Ann. S 32:23-6 (emphasis added). That the Compact specifically limits the definition of "stevedore" to those who provide services to others for compensation but omits any comparable restriction in the definition of "carrier of freight by water" supports our conclusion that the Compact does not contemplate an exemption from its requirements pertaining to longshoremen and pier superintendents for those companies that ship their own goods out of the Port of New York district.

Accordingly, we construe the "or otherwise" language to apply to those persons and entities that ship commercial freight to which they hold title as well as to those who ship freight on behalf of others.3

_____

3. We note that the New Jersey Supreme Court also rejected a similar contention by Mercedes-Benz that "freight" is confined to goods handled by others, and ruled "the phrase `employed * * * by any person' contained in the [1969] amendments' redefinition of `longshoreman' clearly can include an owner of the goods, such as Mercedes-Benz." Mercedes Benz, 99 N.J. at 416, 493 A.2d at 512.

We also reject ENS's contention that because Commission Regulation 3.2(c) provides that a carrier of freight by water shall not require a stevedore license when it provides such services on its own account, "it follows that one is not a carrier of freight by water" when performing services for one's own account. By its terms, this regulation concerns stevedores, which, as noted above, are defined as contractors who provide loading services for others. The import of this regulation is that a carrier of freight by water that performs its loading services in-house, as opposed to utilizing the services of a stevedore, need not have a stevedore's license. This regulation does not speak to the meaning of "carrier of freight by water," much less carve out an exemption from the Compact's requirements regarding the hiring of registered longshoremen and licensed pier superintendents. Rather, as we previously explained, this specific licensing exemption for carriers who ship their own goods serves to make the legislatures' failure to exempt such carriers from the Compact's requirements regarding pier superintendents and hiring agents all the more telling.

Similarly, we reject ENS's reliance on the Shipping Act of 1916, 46 App. U.S.C. S 801, as amended by the Shipping Act of 1984, 46 U.S.C. SS 1701-1720, and the Commerce Act, 49 U.S.C. S 13102. The primary purpose of the Shipping Act, which regulates common carriers of goods by water in interstate and foreign commerce, is to eliminate discriminatory treatment of shippers and carriers. See United States Navigation Co. v. Canard SS Co., 284 U.S. 474, 480-81 (1932). The Interstate Commerce Act establishes a regulatory framework similar to that of the Shipping Act, but the Interstate Commerce Act applies only to inland shippers. Both of those statutes are concerned primarily with the regulation of the rates that shippers charge to their customers, see Thorne Bledsoe McCallister, The Filed Rate Doctrine Under the Interstate Commerce Act and the Shipping Acts, 19 Tul. Mar. L.J. 81, 81-82 (1994), a feature that distinguishes them from the Compact, which is concerned with the regulation of labor hiring within the Port of New York district. It thus stands to reason that the Shipping Act and the Interstate Commerce Act, in seeking to prevent discriminatory shipping rates, are limited to

14

those entities that transport goods for others. Hence, these statutes do not shed any light on the issue before the court.

In conclusion, we hold that the Compact's definition of "carrier of freight by water" applies to persons who load their own goods onto vessels within the port of New York district and ship them for commercial purposes outside of that district. This conclusion gives full effect to the goals animating the Compact and therefore accords with its construction provision, N.J. Stat. Ann. S 32:23-72, which states: "In accordance with the ordinary rules for construction of interstate compacts this compact shall be liberally construed to eliminate the evils described therein and to effectuate the purposes thereof." Because we conclude that the Compact's requirements extend to those who ship their own goods for commercial purposes, we need not reach the Commission's argument that ENS has failed to show that it was the owner of the cars that it shipped.

IV.

For the foregoing reasons, the judgment of the District Court will be affirmed.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

15