**SUNSHINE SHOPPING CENTER, INC., Plaintiff**
**v.**
**KMART CORPORATION, Defendant**

CIV. NO. 1999-0099

District Court of the Virgin Islands

Division of St. Croix

January 27, 2000

██ 

JOEL H. HOLT, DIANE M. RUSSELL, *Holt and Russell*, Christiansted, St. Croix VI., *for plaintiff*

BRITAIN H. BRYANT, *Bryant, Barnes and Simpson*, Christiansted, St. Croix VI., *for defendant*

FINCH, *U.S. District Judge*

## Memorandum Opinion

FINCH, *Chief Judge*

This matter comes before the Court on Plaintiff, Sunshine Shopping Center, Inc.'s ("Sunshine") Motion for Partial Summary Judgment and Defendant, Kmart Corporation's ("Kmart") Motion for Summary Judgment on the Eviction Count.

## I. Facts

Pursuant to Fed. R. Civ. P. 56, Sunshine moves for summary judgment as to Count 1 of the Complaint, seeking to evict Kmart from the premises it leases from Sunshine. Kmart has also moved for summary judgment on the eviction count.

Sunshine claims that Kmart is selling food items in violation of its lease agreement with Sunshine. Paragraph 22 of the lease entered into by Sunshine and Kmart provides, in relevant part:

> 22. The premises hereby demised may be used for any lawful retail purpose . . . . Notwithstanding the foregoing, Tenant agrees with Landlord that so long as Sunshine Super Markets, Inc. d/b/a Sunshine Supermarkets its affiliates or successors is operating a supermarket or grocery store on the property described in Exhibit "A" Parcel B, Tenant agrees that it will not use the demised premises for the operation of a food supermarket or food department or for the sale of off-premises consumption of groceries, meat, produce, dairy products, baker products or any of these. The foregoing shall not, however, pro-

398

hibit: (i) the sale by a restaurant operation, lunch counter, deli or fountain of prepared ready to eat food items, either for consumption on or off the premises (ii) the sale by Tenant, its successors and assigns, of *candy, cookies and other miscellaneous foods* in areas totaling not more than Ten Thousand (10,000) square feet of sales area, exclusive of aisle space. This restriction shall be void if Sunshine Super Markets Inc. d/pb/pa Sunshine Supermarkets its affiliates or successors shall fail to operate a supermarket for a continuous period of one hundred eighty (180) days, except for non operation due to fire and casualty. (Emphasis added).

Def.'s Statement of Facts, Exhibit 2.

Kmart interprets this paragraph as permitting it to sell any and all food items so long as it does not exceed 10,000 square feet, exclusive of aisle space. Sunshine interprets this paragraph as allowing Kmart to sell only candy, cookies and related food items in an area no greater than 10,000 square feet, exclusive of aisle space.

On April 23, 1999, Sunshine's counsel, Gerald Groner, sent Kmart a Notice of Default informing Kmart that it was selling certain food items in violation of its lease,[1] and that Sunshine would seek appropriate remedies if the default was not cured within 30 days pursuant to paragraph 25 of the lease. See Pl.'s Statement of Facts, Exhibit E. Sunshine contends that it is entitled to evict Kmart, because Kmart did not cure this default within the time specified in paragraph 25 of the lease.[2]

---

[1] The food items include, *inter alia,* cereals, non-dairy creamers, teas, coffees, drink mixes, sodas, fruit juices, canned goods, salad dressings, various condiments, assorted boxed rice dishes, and assorted boxed pasta dishes. See Pl.'s Statement of Facts, Exhibit E, for a complete list of the food items which Sunshine claims Kmart is selling in violation of its lease.

[2] Paragraph 25 of the lease agreement provides in relevant part:

If Tenant shall be in default under any other provision of this lease and shall remain so for a period of thirty (30) days after notice to Tenant of such default, then Landlord may, by giving notice to Tenant at any time thereafter during the continuance of such default, either (a) terminate this lease, or (b) re-enter the demised premises by summary proceedings or otherwise, expel Tenant and remove all property therefrom . . . .

## II. Analysis

### A. Summary Judgment Standard

The Court will grant summary judgment only if it is clear from the record "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute involving a material fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). In determining whether such genuine issues exist, the Court must resolve all reasonable doubts in favor of the nonmoving party. *Christopher v. Davis Beach Co.*, 15 F.3d 38, 40 (3d Cir. 1994).

### B. Contract Interpretation

#### 1. Generally

■ In examining a contract, the Court is to interpret the contracting parties' intent as objectively manifested by them and make a preliminary inquiry as to whether the contract is ambiguous. *Hullett v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107, 111 (3d Cir. 1994). A contract provision is considered ambiguous if it is susceptible to two reasonable alternative interpretations. *Id.* Furthermore, if the Court determines that the written terms of the contract are unambiguous, then the Court will interpret the contract as a matter of law. *Id.* If, however, the Court determines that the contract is ambiguous, then the interpretation of the contract is left to the fact finder to resolve the ambiguity in light of extrinsic evidence. *Id.*

In determining the intent of the contracting parties, the Third Circuit applies the "plain meaning rule" of interpretation of contracts, which assumes that the intent of the parties to an instrument is "embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement." *Hullett* at 111, quoting *County of Dauphin v. Fidelity & Deposit Co.*, 770 F. Supp. 248, 251 (M.D.Pa.), *aff'd*, 937 F.2d 596 (3d Cir. 1991).

---

Def.'s Statement of Facts, Exhibit 2.

However, the Third Circuit recognizes that a "determination as to whether the language of an agreement is unambiguous may not be possible without examining the context in which the agreement arose." *Hullett* at 111. Thus, in determining whether ambiguity exists, a court is not always confined to the four corners of the written document. *Id.* The judge must consider not only the words of the contract, but also "the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning." *Hullett* at 111, quoting *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1011 (3d Cir. 1980).

## 2. Ejusdem Generis

■ In this Court's Memorandum Opinion, dated May 27, 1998,[3] the Court relied on the doctrine of ejusdem generis in construing the lease. This Court applied the doctrine of ejusdem generis to the clause "candy, cookies and other miscellaneous foods." The doctrine provides that "contract language must be read in context, and general terms following an enumeration of specific terms should be construed with reference to specific terms." *Royal Ins. Co. (U.K.) Ltd. v. Ideal Mut. Ins. Co.*, 649 F. Supp. 130, 135 (E.D. Pa.), *aff'd*, 806 F.2d 254 (3d Cir. 1986). Applying ejusdem generis to the clause at issue, this Court reasoned that "the words 'candy' and 'cookies' are specific terms, [and] the term 'other miscellaneous foods' is a general term. If the general term 'other miscellaneous foods' is construed with reference to the specific terms, its meaning is other miscellaneous foods related to candy and cookies."

Kmart now argues that the application of the doctrine ejusdem generis is inapplicable in the instant case, because the lease is clear and unambiguous when each provision of the lease is taken into account. Sunshine argues that the Court need not find any ambiguity before applying this doctrine, but rather the doctrine is disregarded only if a contrary intent is otherwise evident from the document. Both parties rely on the following two cases in arguing their opposing positions: *Waterfront Commission v. Elizabeth-Newark*

---

[3] In the Memorandum Opinion, this Court granted Sunshine's Motion for a Preliminary Injunction in part by prohibiting Kmart from expanding its food product line pending final adjudication. *See* Mem. Op. at 7.

*Shipping, Inc.*, 164 F.3d 177 (3d Cir. 1998) and *Cooper Distributing Co. v. Amana Refrigeration, Inc.*, 63 F.3d 262 (3d Cir. 1995).

■ Both parties are incorrect in their understanding of when to apply the doctrine of ejusdem generis. The doctrine should be applied *only if there is ambiguity or uncertainty* as to the meaning of a phrase. *See Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 588, 64 L. Ed. 2d 525, 100 S. Ct. 1889 (1980) ("The rule of ejusdem generis, while firmly established, is only an instrumentality for ascertaining the correct meaning of words when there is uncertainty.") However, the doctrine should not be applied if a contrary intent is otherwise evident from the document. *See Waterfront*, 164 F.3d at 184; *see also, Cooper*, 63 F.3d at 280.

In the instant case, the correct meaning of the phrase "candy, cookies and other miscellaneous foods" in paragraph 22 of the lease is uncertain and ambiguous, and thus the application of the doctrine ejsudem generis is proper in the instant case. Therefore, as this Court found in its May 27, 1998 Memorandum Opinion, ejusdem generis is the appropriate doctrine to apply in interpreting this paragraph of the lease.

## 3. The Other Lease Provisions

Next, Kmart argues that at the time the Court made its previous decision it was "without the benefit of further discovery and analysis of other significant provisions of the lease." Def.'s Response at 12. Kmart argues that the phrase "other miscellaneous foods" read in context of the entire lease, particularly paragraphs 1, 2, 4, 7, 12, 13(a), 15, and 16, means that Kmart is permitted to sell a broad range of foods in areas not more than 10,000 square feet exclusive of aisle space.

Kmart is correct that in deciding whether a contract provision is ambiguous the Court examines the lease as a whole. *See* RESTATE-MENT (SECOND) OF CONTRACTS § 202(2)[4] ("A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together.") However, in the instant case, the other provisions of the lease cited by Kmart do not shed any more light

---

[4] Pursuant to Title 1, Section 4 of the Virgin Islands' Code, the Restatement is the governing law in the Virgin Islands when no other superceding authority exists.

on the meaning of the phrase "candy, cookies and other miscellaneous foods."

Before addressing the other sections of the lease that Kmart contends support its interpretation of the lease, the Court first notes that paragraph 22 of the lease is designated as the "Use, Assignment and Subletting" clause of the lease. Paragraph 22 begins by stating that the premises may be "used for any lawful retail purpose." Def.'s Statement of Facts, Exhibit 2. This "use" provision is then restricted by the following language: "[S]o long as Sunshine Super Markets, Inc. . . . . is operating a supermarket or grocery store on the property . . . Tenant agrees that it will not use the demised premises for the operation of a food supermarket or food department or for the sale of off-premises consumption of groceries, meat, produce, dairy products, baker products or any of these." Def.'s Statement of Facts, Exhibit 2.

Notwithstanding the "use" clause of the lease, Kmart argues that paragraphs 1 and 16 which deal with the expansion within "the demised premises" change the "use" clause of the lease. Specifically, Kmart argues that the right, under both paragraphs 1 and 16, to expand its premises beyond the current building of 104,000 sq. ft., permits a totally different use than Kmart's current use. Sunshine argues, and the Court agrees, that paragraph 22 specifically describes the permitted uses for the "premises hereby demised" so that any expansion of "the demised premises," would not change this use.

Next, Kmart argues that paragraph 2, when coupled with paragraph 13(a), potentially extends the lease term into the 21st Century (75 years past the initial term), and "it therefore should be of no surprise to commercial parties entering such negotiations . . . to negotiate maximum possible usage." Def.'s Response at 13. Kmart then argues that paragraphs 7 and 15 permit Kmart to conduct normal Kmart operations which they allege have always included selling food. Again, the Court disagrees with Kmart. Paragraphs 2 and 13 deal with the extension of the term of the lease; they do not contain language which alters the use provision in paragraph 22. Similarly, paragraphs 7 and 15 only deal with design specifications of the store layout (and repairs thereto); they do not alter the use provision of paragraph 22.

Finally, Kmart argues that paragraph 4 "expressly contemplates that Kmart will sell food." Def.'s Response at 13. In paragraph 4, the parties agreed that in calculating the percentage of rent owed to Sunshine, Kmart is permitted to deduct from the calculation of "gross sales" all sales by a "food market" that occupy any portion of the premises. Kmart argues that if paragraph 22 of the lease were interpreted to mean that Kmart could not operate a food market in 10,000 square feet, then there would be no reason to have to deduct such sales here.

In response to Kmart's argument, Sunshine provides a clearer and more reasonable interpretation of paragraph 4 as read in light of the entire lease. First, Sunshine argues that paragraph 4 was inserted to provide for the situation in which Sunshine ceased operations for a period of 180 days, as Kmart could then sell food products pursuant to the last sentence of paragraph 22. Second, Sunshine argues that paragraph 4 does not authorize such sales, but indicates that such sales would be excluded from the calculation of additional rent.

■ Therefore, despite Kmart's argument to the contrary, the Court finds that the other provisions of the lease, taken together with paragraph 22, do not provide a contrary intent to the meaning of the phrase at issue. Rather, because the Court finds that it is appropriate to apply the doctrine of ejusdem generis to paragraph 22 of the lease, the term "other miscellaneous foods" must be construed with reference to the specific terms "candy and cookies." Thus, paragraph 22 provides that Kmart is not allowed to sell any foods it desires to sell, but rather miscellaneous foods related to candy and cookies. Therefore, the Court finds that because Kmart is selling foods other than those related to candy and cookies, Kmart is in breach of the use restriction of the lease.

## C. Waiver

Kmart argues that Sunshine has waived its right to enforce paragraph 22 of the lease. Kmart avers that between 1993 and August 1997, Sunshine communicated only twice concerning Kmart's sale of miscellaneous foods, and that during that time Sunshine took no action to declare that Kmart was in default under the lease. Kmart contends that it was not until it announced its

404

reconfiguration plan of a "Big K" that Sunshine claimed for the first time that Kmart was in violation of the lease.

Comment (b) of Section 84 of the Restatement (Second) of Contracts defines waiver as "the voluntary relinquishment of a known right." *See also Carter v. Exxon Company USA, Division of Exxon Corp.*, 177 F.3d 197, 204 (3d Cir. 1998), quoting *West Jersey Title & Guaranty Co. v. Industrial Trust Co.*, 27 N.J. 144, 153, 141 A.2d 782 (1958) (Waiver requires a "clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part . . . .")

Sunshine contends that Kmart has failed to point to any affirmative act by which Sunshine waived its rights pursuant to paragraph 22 of the lease. Sunshine offers the following evidence for its argument that it has not waived its right to enforce paragraph 22 of the lease. First, Sunshine offers the express agreement of the parties, in which the parties agreed, pursuant to paragraph 39 of the lease,[5] that inaction would not be construed as a waiver of a party's right to future performance under the lease. *See Roboserve v. Kato Kajaka Co.*, 78 F.3d 266, 277 (7th Cir. 1996) (non-waiver clauses are strictly construed even where full compliance with the lease has not been required for some time). Further, Sunshine argues that Kmart's counsel acknowledged this non-waiver clause in his deposition. *See* Pl.'s Statement of Facts, Exhibit O at 76-77.

Second, Sunshine offers correspondence from 1997 in which Kmart's vice president agreed that it would stop selling food in violation of the lease. Sunshine also offers correspondence from February 1998 and March 1998 in which Sunshine continually objects to Kmart's sale of certain food products.

■ The Court, having considered the above evidence, finds that Sunshine has not voluntarily relinquished its right to enforce paragraph 22 of the lease. Therefore, Kmart's waiver argument is insufficient to defeat summary judgment.

---

[5] Paragraph 39 provides, in relevant part, that "[t]he failure of either party to . . . exercise any right, remedy or election herein contained, shall not be construed as a waiver or relinquishment for the future . . . right to exercise such right, remedy or election . . . ." Def.'s Statement of Facts, Exhibit 2.

## D. Reliance

Kmart argues that pursuant to Section 378 of the Restatement (Second) of Contracts, Sunshine is barred from declaring a default and filing this new action for eviction, because Kmart has materially changed its position on Sunshine's original election to pursue an injunction. Section 378 provides:

> If a party has more than one remedy under the rules stated in this Chapter, his manifestation of a choice of one of them by bringing suit or otherwise is not a bar to another remedy unless the remedies are inconsistent and the other party materially changes his position in reliance on the manifestation.

RESTATEMENT (SECOND) OF CONTRACTS § 378.

Kmart argues that it spent substantial time and money in reconfiguring its store to the "Big K" format in reliance on Sunshine's election to seek injunctive relief. Sunshine argues that it is not barred from bringing its new claim for eviction, because there was no reliance on Kmart's part. Pursuant to paragraph 16 of the lease, Kmart cannot reconfigure its store without Sunshine's permission. Sunshine contends that before granting Kmart permission in 1998 to convert its store to the "Big K" format, Sunshine required Kmart to acknowledge Sunshine's position that Kmart could not sell food products. *See* Pl.'s Statement of Facts, Exhibit G. Furthermore, the evidence indicates that Kmart expressly agreed that if Sunshine approved its expansion plans, Kmart would not raise the issue as a defense in subsequent litigation. *See* Pl.'s Statement of Facts, Exhibit H.

■ Based on the fact that Kmart knew that Sunshine considered it to be in violation of the lease at the time of Kmart's expansion to the "Big K" format, and on the express agreement entered into by both parties that Kmart would not raise the issue as a defense, the Court finds that Kmart did not materially change its position in reliance on Sunshine's decision to seek injunctive relief.[6]

---

[6] Because the Court finds that there was no reasonable reliance on the part of Kmart, Kmart's laches defense must likewise fail.

## E. Eviction

The law states that forfeiture clauses in leases are generally not favored and that "equity abhors a forfeiture." *Lodge, Inc. v. Caravelle Restaurant, Inc.*, 20 V.I. 268, 276 (D.V.I. 1984) citing *Jones v. New York Guaranty and Ind. Co.*, 101 U.S. 622, 628, 25 L. Ed. 1030 (1879). Furthermore, the Court has substantial discretion in forfeiture cases; it "may decline where warranted to grant a lessor cancellation of a lease, even if such right appears available to him." *Id.* The Court may grant relief to prevent forfeiture when the lessor can, by compensation or otherwise, be placed in the same condition as if the breach had not occurred. *See Ingvoldstad v. Kings Wharf Island Enter., Inc.*, 19 V.I. 624, 628 (D.C.V.I. 1983); *see also Hasden v. McGinnis*, 54 Tenn. App. 39, 387 S.W.2d 631, 633 (Tenn. 1964).

Sunshine argues that Kmart is not entitled to equitable relief due to its own "unclean hands" based upon the record in the instant case. In *Bishop v. Bishop*, 257 F.2d 495, 500 (3d Cir. 1958), the court adopted the following maxim of equity: "It is an ancient and established maxim of equity jurisprudence that he who comes into equity must come with clean hands. If a party seeks relief in equity, he must be able to show that on his part there has been honesty and fair dealing."

Sunshine claims that Kmart's in-house counsel, Donald Dayne, knew that Sunshine intended for the lease to restrict Kmart's sale of foods so that Kmart would not compete with Sunshine. Sunshine also contends that Kmart knew in March of 1997 that its food sales violated the lease. Sunshine proffers a letter written by Sunshine to Kmart's vice president, Tom Downs, as evidence of its contention. The letter provides in relevant part, "[a]s I pointed out to you, the owners have always understood that Kmart would honor its agreement not to sell food and other grocery items as outlined in the lease." Pl.'s Statement of Facts, Exhibit S. Finally, Sunshine proffers as evidence of Kmart's unclean hands, the deposition of Dayne, in which Dayne testified that it was always Kmart's intent to sell whatever food products it wanted to sell. *See* Pl.'s Statement of Facts, Exhibit L.

Kmart argues that it sold the disputed foods, believing it was in compliance with the lease. Kmart offers the following communications in support of its argument. First, when the store opened in

407

1993, Sunshine attorney, Winston Hodge, wrote a letter to Dayne asking Kmart to remove certain food items from its sales area. *See* Def.'s Statement of Facts, Exhibit 15. Dayne responded, informing Sunshine that paragraph 22 allows Kmart to sell the disputed foods and that Kmart is in compliance with the lease. *See* Def.'s Statement of Facts, Exhibit 16. Kmart alleges that Sunshine never replied to Dayne's letter.

Second, in 1995, Sunshine attorney, Gerald Groner, wrote a letter to Dayne concerning various issues about Sunshine Mall, including certain amendments to the lease. *See* Def.'s Statement of Facts, Exhibit 17. In that letter, Groner does not claim that Kmart is in violation of the lease. *See id.* Rather, Groner merely asks for Dayne's thoughts on whether the sale of certain food items violates the lease.[7] *See id.* Dayne responded, stating that "Kmart's sale of grocery items is clearly provided for under [paragraph] 22 of the lease." Def.'s Statement of Facts, Exhibit 17. Kmart alleges that once again Sunshine never responded.

Additionally, Kmart argues that it has been operating legitimately under the May 27, 1998 preliminary injunction Order sought and obtained by Sunshine. It argues that in reliance on that Order, Kmart reconfigured its store to the new "Big K" format and continues to this day to sell the food items it had always sold. Kmart contends that it cannot now be penalized with the sever remedy of forfeiture by continuing to operate under the Order Sunshine sought, and that even if Sunshine is correct about its lease interpretation, it can be compensated with damages.

■ The Court finds that a genuine issue of material fact exists as to whether Kmart's actions constitute unclean hands. Therefore, the Court denies that portion of Sunshine's motion seeking eviction.

### III. Conclusion

In accordance with the attached Order, Sunshine's Motion for Partial Summary Judgment seeking to evict Kmart is granted in

---

[7] The letter provides, in pertinent part: "My clients note that such items as rice and coffee are being sold from the store. This seems to violate the letter and spirit of the prohibition. I would like to hear your thoughts on this." Def.'s Statement of Facts, Exhibit 17.

part and denied in part. Sunshine's motion is granted as to the breach-of-contract claim and denied as to the request for eviction. Kmart's cross-motion is denied entirely.