### In re HOUSE OF VIZIA GOLD CREATIONS, INC., Debtor.

### No. 1–01–00011–BM.

United States Bankruptcy Court,
D. Virgin Islands,
St. Croix Division.

April 15, 2002.

Lydia Logie Moolenaar, St. Croix, VI, for Debtor.

Edward L. Barry, St. Croix, VI, for David C. and Margaret Elliott.

### MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

David C. Elliott and Margaret Elliott, lessors under a lease for commercial real property, have objected to a motion by debtor House of Vizia Gold Creations, Inc. for leave to amend Schedule G to list the lease as an unexpired lease of nonresidential real property for which it was the lessee at the time of its bankruptcy filing. The Elliotts maintain that Dorota J. and Jonathan J. Howard, not debtor, were the intended lessees under the lease.

Debtor asserts that it, not the Howards, was the intended lessee under the lease.

We will grant debtor's motion to amend Schedule G and accordingly will overrule the objection of the Elliotts.

### —FACTS—

Debtor was in the business of manufacturing and selling jewelry.

Dorota Howard began doing business under the trade name "House of Vizia Gold Creations" in 1988.

On April 1, 1993, Dorota Howard, her husband Jonathan Howard, and a third individual executed articles of incorporation creating a corporate entity named "House of Vizia Gold Creations Inc.". The articles of incorporation were filed that same day pursuant to U.S. Virgin Islands law with the appropriate governmental official. Dorota Howard served as its president throughout its operation.

House of Vizia Gold Creations did business starting in 1988 in a hotel in Christiansted until it was severely damaged by a hurricane some ten years later. After the hurricane debtor decided to find a new site for its business. Dorota Howard and her husband looked at commercial space owned by David Elliott and his wife.

On two or three occasions prior to August 19, 1999, David Elliott visited debtor at its old place of business to discuss its moving to the location he owned. The name "House of Vizia Gold Creations, Inc." appeared prominently on a large sign above the entryway to debtor's former place of business. On one of these occasions, Dorota Howard gave David Elliott a business card with the name "House of Vizia Gold Creations, Inc." prominently printed on it.

A lease for commercial space located at 4AB Strand, to which debtor relocated its place of business, was executed on August 9, 1999. The lease was prepared by David Elliott, who in his own handwriting filled in the blank spaces on the document. The document stated that the lease was entered into by David and Margaret Elliott as landlord and "Dorota Howard & Jonathan Howard, T/A House of Vizia" as tenant. The term of the lease was from August 10, 1999 to August 9, 2004.

Except for the pages on which the parties were to execute the agreement, Dorota Howard and David Elliott affixed their respective initials at the bottom of each page of the document. Jonathan Howard did not affix his initials.

The document was executed by Jonathan Howard as landlord and by Dorota Howard as tenant. No indication was given on the signature page whether she had executed the lease on behalf of herself or on behalf of the corporation House of Vizia Gold Creations, Inc.

Although he was identified in the first paragraph of the lease as a tenant, Jona-

than Howard did not execute the lease as a tenant. He instead signed it twice, once as a witness to the signature to Dorota Howard and again as a witness to the signature of David Elliott.

The rent due under the lease was paid with checks drawn on debtor's corporate account.

On February 7, 2001, David Elliott gave notice that rents due under the lease were in arrears in the amount of $8,220. He stated that the lease agreement would be "enforced" if the rent was not current within ten days. The notice was given to "House of Vizia", not to Dorota and Jonathan Howard trading as House of Vizia.

On February 9, 2001, David Elliott received inventory from debtor with the stated value of $8,220 in lieu of past-due rent. A hand-written receipt was drafted on stationery with the letterhead of "House of Vizia Gold Creations" printed at the top. It asserted that the exchange of inventory brought the rent owed for the Stand Street location "up to date". The document was executed by Dorota Howard as "owner" of "House of Vizia Gold Creations, Inc." and by David Elliott as owner of the location.

On March 7, 2001, a letter was sent to David Elliott on the letterhead of "House of Gold Creations, Inc." notifying him that House of Gold Creations was closing and would vacate the premises in thirty days.

The premises were vacated on or before April 7, 2001.

House of Vizia Gold Creations, Inc. filed a voluntary chapter 7 petition on April 30, 2001. A chapter 7 trustee was appointed shortly thereafter. The above lease was not listed on debtor's original Schedule G, "Executory Contracts and Unexpired Leases".

David Elliott sent a letter to Dorota and Jonathan Howard on May 21, 2001, notifying them that he had received an offer to rent the premises they had "abandoned" for substantially less than was due under the above lease. He stated that, unless they found someone else to assume it, he would accept the offer and would hold them liable for the balance of the rent due under the lease.

Debtor brought a motion on September 12, 2001, to amend Schedule G to list the above lease as an unexpired lease. According to debtor, the landlord had "rescinded" an agreement to let debtor out of its five-year lease.

David and Margaret Elliott objected on October 10, 2001, to debtor's motion to amend. They asserted that Dorota and Jonathan Howard, not debtor, were the lessees under the lease dated August 9, 2001.

An evidentiary hearing on debtor's motion to amend Schedule G and the Elliotts' objection thereto occurred on February 14, 2001.

## —DISCUSSION—

■ The issue presented here concerns the identity of the lessee under the above lease. If debtor is the lessee, its motion to amend shall be granted. If, however, debtor is not the lessee and Dorota and Jonathan Howard are instead, its motion is inappropriate and shall be denied.

Debtor maintains that it, not Dorota and Jonathan Howard, was the lessee. David and Margaret Elliott maintain that Dorota and Jonathan Howard, not debtor, were the lessees under the lease.

Resolution of this issue depends on the law of contracts. Where, as is the case here, the Virgin Islands has no controlling statute, we must apply the common law as articulated in the various approved restatements of the law. If the restatements

are silent, we must apply the common law as generally understood and applied in the United States. 1 V.I.C. § 4 (2001). Where the applicable restatement is silent and there is a split of other authority, we must apply the sounder rule. *Dunn v. HOVIC,* 1 F.3d 1371, 1387 (3d Cir.1993); *Polius v. Clark Equipment Co.,* 802 F.2d 75, 77 (3d Cir.1986).

■ The first step in resolving the above issue is to construe the above lease in order to ascertain the intent of the parties thereto, as objectively manifested by them. *Sunshine Shopping Center v. KMart Corp.,* 85 F.Supp.2d 537, 540 (D.Vi. 2000).

■ The process of construing a contract preliminarily requires a determination concerning whether the contract is ambiguous. *In re Stendardo,* 991 F.2d 1089, 1094 (3d Cir.1993). A contract provision is ambiguous when it is susceptible of multiple alternative reasonable interpretations. *Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001, 1011 (3d Cir.1980).

■ If a contract provision is unambiguous—i.e., can reasonably be read only one way—the court will interpret it as a matter of law. *In re Stendardo,* 991 F.2d at 1094. If it is ambiguous, interpretation is left to the finder of fact to determine in light of extrinsic evidence. *Mellon Bank,* 619 F.2d at 1011.

■ The so-called "plain meaning rule" applies in ascertaining the intent of the parties to a contract. It is presumed that their intent is expressed in the writing itself. When the words used are clear and unambiguous, intent is ascertained from the express language of the contract. *Hullett v. Towers, Perrin, Forster & Crosby,* 38 F.3d 107, 111 (3d Cir.1994).

■ We are not, however, necessarily confined to the four corners of a written instrument when determining whether there is an ambiguity. This determination may not be possible without examining the context in which the contract arose. *Id.* In addition to the words of the contract itself, we also must consider the alternative meaning suggested by counsel and the nature of the objective evidence offered in support of that meaning. *Id.*

■ One such type of objective extrinsic evidence is the subsequent course of performance of the parties to the contract. It is a basic tenet of contract construction that a contract shall be interpreted in light of the meaning the parties have accorded it, as evidenced by their conduct in its performance. *James v. Zurich–American Insurance Co. of Illinois,* 203 F.3d 250, 255 (3d Cir.2000); Restatement (Second) of Contracts § 202(5).

We conclude after examining the lease that it is ambiguous with regard to the identity of the lessee.

The opening paragraph of the lease agreement recites that it is by and between David and Margaret Elliott as landlord and "Dorota Howard & Jonathan Howard, T/A House of Vizia" as tenant. No express indication is given that she had executed it on behalf of House of Vizia Gold Creations, Inc. as its officer or agent.

If we limit ourselves to just these portions of the agreement, we might be persuaded that Dorota and Jonathan Howard, not debtor, were the lessees under the lease agreement. Other portions of the lease, however, suggest that Dorota and Jonathan Howard were not the intended lessees.

For instance, even though the opening paragraph of the lease agreement recited that Jonathan Howard also was a tenant, he did not execute it as a tenant. He

instead affixed his signature as a witness to the signature of David Elliott and also as a witness to the signature of Dorota Howard. Had the parties to the lease agreement intended for Jonathan Howard to be a tenant, we would expect him to have signed the lease agreement as a *tenant* rather than twice as a *witness*.

Also, with the exception of the signature pages, the initials of Dorota Howard and David Elliott were affixed at opposite corners of the bottom of each page of the lease agreement. Had the parties intended for Jonathan Howard to be a tenant, we would expect him also to have affixed his initials to each of these pages. The absence of his initials on these pages suggests that he was not an intended tenant under the lease agreement.

Once it is determined that a contract is ambiguous, the finder of fact may resolve the ambiguity in light of extrinsic evidence lying beyond the "four corners" of the written agreement. *Hullett*, 38 F.3d at 111; *Sunshine Shopping Center*, 85 F.Supp.2d at 540. Circumstances surrounding contract formation are relevant to determining its meaning. *United States v. State of New Jersey*, 194 F.3d 426, 430 (3d Cir.1999).

There is extrinsic evidence arising from the testimony of Dorota Howard indicating that she too was not an intended lessee under the above lease agreement. Dorota Howard testified, credibly we believe, that she did not indicate in the above lease agreement that she had executed it on behalf of the corporation because she believed that the written document was merely a preliminary draft. She mistakenly believed that a final version was forthcoming in which it would be clearly indicated that she had executed the lease as president of debtor and on its behalf.

Perhaps the most compelling evidence that the parties to the lease agreement intended for the corporation to be the lessee is found in the subsequent performance and course of conduct of the parties. Rental payments due under the lease were made with checks drawn on the corporation's account. Had the parties intended for Dorota and Jonathan Howard to be the lessees, it is unlikely that corporate funds would have been utilized to pay the rent.

Also, we previously noted that the "invoice" dated February 7, 2001, giving notice of arrears in the amount of $8,220 due on the rent was addressed to "House of Vizia", not to Dorota and Jonathan Howard. These arrears were paid that same day when debtor, not Dorota and Jonathan Howard, gave some of its inventory to David Elliott to cure the arrearage. The invoice issued in connection therewith was signed by Dorota Howard as "owner" of "House of Vizia Gold Creations, Inc." and by David Elliott as "owner of the location". It is unlikely that the corporation would have parted with any of its inventory for this purpose unless the Howard and the Elliotts had intended for the corporation to be liable as the lessee for rent due and owing under the lease agreement.

We find unpersuasive the testimony of David Elliott that he did not know that when the lease agreement was executed that House of Vizia Gold Creations was a corporation and that he therefore could not have intended for it to be the lessee under the lease agreement. He had visited debtor's previous place of business on two or three occasions prior to August 9, 1999. A large sign with the name "House of Vizia Gold Creations, Inc." printed on it in large letters hung directly above the entrance to the store. On one of these occasions, Dorota Howard also gave David Elliott a business card with the name "House of Vizia Gold Creations, Inc."

printed prominently on it. It defies belief that David Elliott, an experienced business person, would not have noticed and understood the significance of such matters.

David Elliott testified that had he known House of Vizia Gold Creations was a corporation, he would not have leased the premises to it because it was his policy not to enter into a lease agreement with a "small" corporation. His performance and subsequent course of conduct belies this contention. As was noted, he acted as though the corporation was the debtor under the lease agreement. Were this indeed his policy, it is doubtful that he would have acted as he did with respect to the corporation.

We conclude in light of the foregoing that debtor, i.e., House of Vizia Gold Creations, Inc., was the intended lessee under the lease agreement of August 9, 1999. We consequently will grant debtor's motion to amend Schedule G to identify the above lease agreement as an unexpired lease for which it was the lessee.

The chapter 7 trustee filed a final report and account and a proposed final distribution shortly after debtor file its motion to amend Schedule G. Now that debtor has been granted leave to amend Schedule G, we anticipate the Elliotts will assert a claim for rejection damages. This in turn will affect final distribution to general unsecured creditors by adding another to the list. Assuming that this is correct, we will direct the Elliotts to file any claim they may have within fifteen days and will further direct the chapter 7 trustee to file an amended proposed final distribution within fifteen days thereafter.