**FLIGHT SYSTEMS, INC., Appellant,**

v.

**ELECTRONIC DATA SYSTEMS CORPORATION, Appellee.**

No. 96–7351.

United States Court of Appeals, Third Circuit.

Argued Jan. 22, 1997.

Decided April 29, 1997.

Steven E. Grubb (Argued), Goldberg, Katzman & Shipman, Harrisburg, PA, for Appellant.

Diana S. Donaldson, Paul G. Gagne (Argued), Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for Appellee.

Before: NYGAARD and LEWIS, Circuit Judges, and SCHWARZER, District Judge *

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

Flight Systems, Inc. appeals an order by the district court adopting the report and recommendation of a magistrate judge and dismissing Flight Systems' suit under Fed. R.Civ.P. 12(b)(6). We will vacate the order and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This diversity case arises from a contract dispute governed by the laws of Pennsylvania. Because it comes to us after dismissal under Rule 12(b)(6), the facts are presented as alleged by Flight Systems.

In April 1995, Electronic Data Systems ("EDS"), a Texas corporation, contacted

---

* The Honorable William W. Schwarzer, Senior Judge of the United States District Court for the Northern District of California, sitting by designation.

Flight Systems, a Pennsylvania corporation, through a broker about renting space in an office building at 505 Fishing Creek Road in Lewisberry, Pennsylvania. Flight Systems was amenable, and the broker sent Flight Systems a letter dated April 20, 1995 outlining the terms of the five-year lease EDS desired. On the same day, Flight Systems removed the property from the rental market.

Intensive negotiations followed, culminating in a 59–page blackline draft lease agreement. On June 28, 1995, Ronald Katzman, the attorney representing Flight Systems, received a memorandum from Donna Merriman, an EDS employee who, Flight Systems alleges, was fully authorized to bind EDS to the terms of the lease. Merriman stated that if one final modification, which she attached, was agreeable, Katzman should contact Barbara Stone of EDS and the lease agreement would be prepared for execution. Katzman approved the proposed modification and conveyed his acceptance of the lease to Stone the same day. Flight Systems contends that a contract was formed at this point.

When Katzman spoke to Stone on June 28, 1995, she told him that the lease agreement would be executed immediately by EDS, and then forwarded by overnight delivery to him for signature by Flight Systems' representatives. Instead, the next day Flight Systems president Robert Shaffner received a telephone message that EDS no longer wished to lease the property at 505 Fishing Creek Road. Katzman tried to find out what had happened, but received no answer until August 15, 1995, when EDS' attorney informed Flight Systems that EDS' acceptance of the lease agreement had been contingent on procuring additional business in the Harrisburg area. Since EDS had not succeeded, it did not need more office space. Flight Systems says that it had never been told of this contingency.

Flight Systems sued EDS in the Pennsylvania Court of Common Pleas, alleging breach of contract and breach of obligation to negotiate in good faith. EDS removed the case to the United States District Court. EDS then made a motion under Rule 12(b)(6)

of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim upon which relief may be granted. A magistrate judge recommended that the court grant EDS' motion, and the district court issued an order dismissing the complaint.

## II. BREACH OF CONTRACT

The district court found that Flight Systems could not prevail on its breach of contract claim because it had not alleged the existence of a signed writing that would satisfy Pennsylvania's statute of frauds governing real property leased for more than three years, 68 Pa. Stat. Ann. § 250.202, although it alleged the existence of a five-year lease. We disagree.

■ On a Rule 12(b)(6) motion, an affirmative defense, such as the statute of frauds defense raised by EDS, is appropriately considered only if it presents an insuperable barrier to recovery by the plaintiff. *See Continental Collieries v. Shober,* 130 F.2d 631, 635–36 (3d Cir.1942) (holding that affirmative defenses may be raised on a 12(b)(6) motion "where the defect appears on the face of the pleading"). Applying similar reasoning, the Pennsylvania courts have concluded that a waivable statute of frauds defense may serve as a basis for judgment on the pleadings only when trial would be a "fruitless exercise" because the plaintiff fails to allege facts in his pleadings that take an oral contract outside the statutory prohibition. *Keil v. Good,* 467 Pa. 317, 356 A.2d 768, 771 (1976).

■ Allowing this matter to proceed would not be a fruitless exercise. Under Pennsylvania law, a lease of real property for a term of more than three years must be made in writing and signed by the parties creating the lease. 68 Pa. Stat. Ann. § 250.202. However, this statute of frauds is a waivable defense. *Blumer v. Dorfman,* 447 Pa. 131, 289 A.2d 463, 468 (1972). Consequently, it will not bar recovery if EDS fails to raise the defense in its answer, or admits to the existence of a contract in pleadings or testimony. *Zlotziver v. Zlotziver,* 355 Pa. 299, 49 A.2d 779, 781 (1946); *Target Sports-*

*wear, Inc. v. Clearfield Foundation,* 327 Pa.Super. 1, 474 A.2d 1142, 1150 (1984) (citing cases). Pennsylvania courts have declared that the purpose of the statute of frauds is to shield persons with interests in land from being deprived of those interests by perjury, not to arm contracting parties with a sword they may use to escape bargains they rue. *Fannin v. Cratty,* 331 Pa.Super. 326, 480 A.2d 1056, 1059 (Pa.Super. Ct.1984) (citing *Zlotziver,* 49 A.2d at 781 and *Gerlock v. Gabel,* 380 Pa. 471, 112 A.2d 78, 81 (1955)); *accord Sferra v. Urling,* 328 Pa. 161, 195 A. 422, 426 (1937); *Axler v. First Newport Realty Investors,* 279 Pa.Super. 14, 420 A.2d 720, 722 (1980) (citing *In re Estate of Beeruk,* 429 Pa. 415, 241 A.2d 755, 758 (1968)). If the defendant admits under oath that a contract was formed, the purposes of the statute of frauds are served, *Zlotziver,* 49 A.2d at 781, and the contract will be afforded full legal effect, *Sferra v. Urling,* 195 A. at 425. Allowing EDS to dispose of the breach of contract claim before it has even submitted an answer would enable EDS to use the statute of frauds as a sword, in contravention of the statute's purpose. *Cf. ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 862–63 (3d Cir.1994) (finding dismissal on a 12(b)(6) motion improper where applicable New Jersey statute of frauds contained an exception for admissions).

 Moreover, should EDS raise the statute of frauds as an affirmative defense in its answer, Flight Systems may be able to produce writings that satisfy the statute of frauds. To ensure that the statute of frauds is not used as a sword to perpetrate fraud, the Pennsylvania Supreme Court has stressed that adjudicators should "always be satisfied with 'some note or memorandum' that is adequate ... to convince the court that there is no serious possibility of consummating fraud by enforcement." *In re Estate*

*of Beeruk,* 241 A.2d at 758 (quoting 2 Corbin on Contracts § 498 (1950)). As for lease agreements, "no particular form of words is necessary to constitute a lease and ... any writing is sufficient which establishes the intention of one party voluntarily to dispossess himself of the premises, for a consideration, and of the other to assume the possession for a prescribed period." *Morrisville Shopping Center v. Sun Ray Drug Co.,* 381 Pa. 576, 112 A.2d 183, 186 (1955) (citations omitted). The writing need not be titled a "lease." *Id.,* 112 A.2d at 187. Furthermore, the statute of frauds can be satisfied by several writings if at least one writing is signed by the party to be charged and refers to the unsigned writing or it appears from examination of all the writings that the signed writing was signed with reference to the unsigned writings. *See Target Sportswear,* 474 A.2d at 1147 (citing *Fleming v. Strayer,* 163 Pa.Super. 607, 63 A.2d 122, 124 (1949)).[1] Because the statute of frauds pertaining to leases, 68 Pa. Stat. Ann. § 250.202, requires that a lease be signed by both the landlord and tenant, Flight Systems must produce writings signed by both parties, *see Flomar Corp. v. Logue,* 418 Pa. 181, 210 A.2d 254, 255 (1965), although both signatures need not appear on the same writing. Where the writings produced consist of an offer and acceptance, both writings must pertain to the same terms without modification. *Target Sportswear,* 474 A.2d at 1149–50 (quoting 37 C.J.S. Statute of Frauds § 180(c)).

 In a footnote, the district court rejected Flight Systems' contention that the June 28, 1995 memorandum from Donna Merriman of EDS, referring to and annexing a proposed final modification to the draft lease agreement, constituted a signed writing. We agree with the district court that

---

1. In full, *Fleming* states, "The general requisites of a memorandum are listed in Restatement, Contracts, § 207, and the rule governing the sufficiency of separate writings to constitute a memorandum is set forth in § 208:

'The memorandum may consist of several writings,

　(a) if each writing is signed by the party to be charged and the writings indicate that they relate to the same transaction, or

(b) though one writing only is signed if

(i) the signed writing is physically annexed to the other writing by the party to be charged, or

(ii) the signed writing refers to the unsigned writing, or

(iii) it appears from examination of all the writings that the signed writing was *signed* with reference to the unsigned writings.' "
63 A.2d at 124.

this writing alone would not satisfy the statute of frauds, since § 250.202 requires the signatures of both parties to a lease agreement for more than three years. *Flomar,* 210 A.2d at 255. However, we do not agree that the memorandum could not satisfy the statute of frauds requirement of a "signed" writing if Flight Systems also produced writings it signed which pertain to the same terms, *Target Sportswear,* 474 A.2d at 1149–50, and sufficiently state those terms, *In re Estate of Beeruk,* 241 A.2d at 758. Any mark or symbol—including a typewritten name—will be deemed to constitute a signature for the purposes of the statute if it is used with the declared or apparent intent to authenticate the memorandum. *Hessenthaler v. Farzin,* 388 Pa.Super. 37, 564 A.2d 990, 993 (Pa.Super.1989) (finding mailgram which stated, "We, Dr. Mehdi and Marie Farzin, accept the offer of $520,000 for our property at 6175 and 6185 Hocker Drive Harrisburg, Pennsylvania," was sufficiently reliable to constitute a "signed" writing) (surveying case law). As the *Hessenthaler* court noted, "the proper, realistic approach ... is to look to the *reliability* of the memorandum, rather than to insist on a formal signature." *Id.* In this instance, Donna Merriman's typewritten name has been initialed and is part of a facsimile transmission made on the stationery of EDS' legal affairs department. Moreover, the memorandum on which Merriman's name and initial appear refers specifically to the "proposed Lease w/Flight Systems, Inc. at 505 Fishing Creek Road, Lewisberry, PA." *Cf. id.* at 994 (finding the inclusion of the precise terms of the sales agreement, together with the sellers' names, sufficiently revealed the seller's intention to adopt the writing as their own). These factors lend reliability to the memorandum, and it may, therefore, satisfy the statute of frauds when considered in conjunction with other documents.

▆▆▆▆ Finally, even if Flight Systems ultimately fails to obtain an admission that a contract was formed, and fails to produce signed writings that satisfy the statute of frauds, Flight Systems has nevertheless sufficiently alleged the existence of an oral contract, precluding dismissal of its complaint. The statute of frauds does not void contracts relating to land that fail to comply with its requirements; it only renders unenforceable the durational term of those contracts. *See Ferri v. Liberatoscioli,* 338 Pa. 454, 13 A.2d 45, 45–46 (1940). Flight Systems may recover for breach of an oral lease, although the damages available are limited. If Flight Systems satisfies the statute of frauds, either by producing signed writings or by obtaining an admission from EDS that a five-year lease was formed, specific performance may be awarded. *See Sferra,* 195 A. at 425. If, on the other hand, Flight Systems only succeeds in proving the existence of an oral lease agreement, Flight Systems cannot recover the loss of its bargain unless the contract was induced by fraud, *Fannin,* 480 A.2d at 1060 (citing *Seidlek v. Bradley,* 293 Pa. 379, 142 A. 914, 915 (1928)).[2] It may, however, recover any consideration paid to EDS and expenses incurred on the faith of the contract. *Fannin,* 480 A.2d at 1060–61 (citing *Polka v. May,* 383 Pa. 80, 118 A.2d 154, 156 (Pa. 1955)); *see also Seidlek,* 142 A. at 915 (noting the availability of nominal damages, at a minimum).

▆▆▆▆ In its complaint, Flight Systems alleged that an oral contract was formed on June 28, 1995 when Donna Merriman of EDS forwarded the final lease modification to Ronald Katzman, Flight Systems' attorney, and Katzman approved the change and conveyed Flight Systems' acceptance to EDS. Thus, offer and acceptance are alleged. The fact that the parties intended subsequently to execute a signed writing does not preclude a finding that a contract was formed: if the minds of the parties met and the essential provisions of the contract were agreed upon, the contract was created, and the later writing is simply evidence of the agreement. *Nakles v. Union Real Estate Co.,* 415 Pa. 407, 204 A.2d 50, 51 (1964);[3] *Taylor v. Stan-*

---

**2.** If EDS were found to have terminated an at-will tenancy without proper notice, Flight Systems could recover rent for the notice period.

See *Fife v. Great Atlantic & Pacific Tea Co.,* 166 Pa.Super. 77, 70 A.2d 369, 371 (1950).

**3.** The *Nakles* case is especially pertinent here, since it presents similar facts. The plaintiffs

*ley Co.,* 305 Pa. 546, 158 A. 157, 159 (1932); *see also Goldman v. McShain,* 432 Pa. 61, 247 A.2d 455, 458–59 (1968) (vacating judgment on the pleadings where defendant had not signed lengthy lease document since plaintiff alleged that the parties had reached agreement and the document was merely a formalization); *Frankel v. Northeast Land Co.,* 391 Pa.Super. 226, 570 A.2d 1065, 1068 (1990) (finding demurrer inappropriate where purchasers had signed sales agreement, but realtors had only signed an addendum; the trial court was required to accept the averments of the complaint that the realtors had entered into a sales agreement). Of course, EDS may dispute the contentions that an agreement was reached, or that Merriman or Katzman were authorized to bind the parties; but that would raise an issue of fact for determination at trial.

In summary, the statute of frauds does not clearly prevent recovery at this preliminary stage of the proceedings, and dismissal under Rule 12(b)(6) was inappropriate.

### III. BREACH OF DUTY TO NEGOTIATE IN GOOD FAITH

Flight Systems alleges that EDS breached its duty to negotiate the lease agreement in good faith because it concealed the fact that its willingness to enter into the lease agreement was contingent on finding additional business in the Harrisburg area. The district court dismissed this claim, finding that Flight Systems had failed to allege any facts suggesting the existence of an agreement to negotiate in good faith. Again, we disagree.

█ The Pennsylvania Supreme Court has not decided whether a cause of action for breach of a duty to negotiate in good faith exists in the Commonwealth. See Channel *Home Centers v. Grossman,* 795 F.2d 291, 299 (3d Cir.1986); *Jenkins v. County of*

*Schuylkill,* 441 Pa.Super. 642, 658 A.2d 380, 385, *alloc. denied,* 542 Pa. 647, 666 A.2d 1056 (1995). However, we predicted in *Channel Home Centers* that Pennsylvania would recognize such a cause of action. 795 F.2d at 299.

█ An agreement to negotiate in good faith is a contract. *Id.* at 298–99. Therefore, the plaintiff states a cause of action for breach of this duty when he alleges facts which, if proven, demonstrate that (1) both parties manifested an intention to be bound by an agreement to negotiate in good faith; (2) the terms of the agreement were sufficiently definite to be enforced; (3) consideration was conferred, *id.* at 299, and (4) the agreement was breached by bad faith conduct.

█ We conclude that Flight Systems has alleged sufficient facts to survive the motion to dismiss. Flight Systems contends that it agreed to remove the property at 505 Fishing Creek Road from the rental market while negotiating a lease agreement with EDS according to explicit terms set forth in the letter dated April 20, 1995 from EDS' broker, on the understanding that a final agreement would be reached by July 1, 1995. Thus, Flight Systems has alleged it agreed to negotiate a lease for a specific property on specific terms within a specific time, and it conferred consideration on EDS by removing the property from the market for the duration of that period. Flight Systems argues that EDS manifested its intention to be bound by establishing terms for a lease in the April 20, 1995 letter and engaging in intensive negotiations in the following two months to finalize the lease agreement. A promise by EDS to conclude negotiations by July 1, 1995 could constitute consideration, since it conferred a benefit on Flight Systems by limiting the time the company was

sought to lease space for a business. *Id.,* 204 A.2d at 50–51. After some negotiation with the landlord, a rent was agreed upon, the parties shook hands, and the landlord accepted a check for the first month's rent. *Id.* at 51. That day, the landlord sent the plaintiffs a lease agreement, which they signed and returned. *Id.* The landlord did not sign the lease, and later informed the plaintiffs that the space had been rented to

someone else. *Id.* The court held that an oral contract had been formed on the day the rent was agreed upon, the parties shook hands and the landlord accepted the check; the written lease was a mere formality. *Id.* At the very least, the court concluded, a tenancy at will was created and plaintiffs had a valid cause of action. *Id.* at 51–52.

obliged to keep the property off the rental market. Finally, Flight Systems alleges that EDS acted in bad faith by concealing from Flight Systems that it did not intend to execute the lease if it could not obtain additional business in the Harrisburg area. These allegations are sufficient to state a cause of action.

EDS counters Flight Systems' argument by pointing out that the April 20, 1995 letter includes the caveat, "This is strictly an outline and is contingent upon EDS internal approval and a mutually executed lease document." This evidence merely raises an issue of material fact; it does not preclude the claim since Flight Systems relies not only on this letter but on EDS' course of conduct to argue that EDS agreed to negotiate in good faith.[4] *See American Leasing v. Morrison Co.*, 308 Pa.Super. 318, 454 A.2d 555, 560 (1982) (noting that the actions of parties are significant and substantial evidence in determining whether they intended to be bound by an agreement) (citing *Fenestra, Inc. v. John McShain, Inc.*, 433 Pa. 137, 248 A.2d 835 (1969) and *Atlantic Richfield Co. v. Razumic*, 480 Pa. 366, 390 A.2d 736 (1978)). Moreover, a trier of fact might find that the caveat was intended to ensure that the April 20, 1995 letter would not be construed as a lease, while still demonstrating that EDS intended to oblige itself to negotiate in good faith. As we noted in *Channel Home Centers*, 795 F.2d at 298, a lease and an obligation to negotiate in good faith are separate and distinct contracts; Flight Systems is alleging the April 20, 1995 letter evinces the latter, not the former.

## IV. CONCLUSION

For the foregoing reasons, we will vacate the order of the district court and remand for further proceedings consistent with this opinion.

---

4. Thus, Flight Systems' complaint differs from the dismissed complaint at issue in *Philmar Mid–Atlantic v. York St. Assoc.*, 389 Pa.Super. 297, 566 A.2d 1253, 1255 (1989), where the plaintiff relied solely on a letter of intent containing a

similar caveat, which negated the inference that both parties had manifested assent to be bound.

\* [Pursuant to Rule 43(c) of F.R.A.P.]