**MOUNTAINTOP LIMITED PARTNERSHIP, Plaintiff, v. COLOMBIAN EMERALDS INTERNATIONAL, INC. d/b/a PARFUM DE PARIS, Defendant.**

Civil No. 908/1993

Territorial Court of the Virgin Islands,

Division of St. Thomas and St. John

July 18, 2001

JOSEPH ARELLANO, ESQ., Campbell, Arellano & Rich, *for Plaintiff*

TOM BOLT, ESQ., Tom Bolt & Associates, P.C., *for Plaintiff*

A. JEFFREY WEISS, ESQ., A. J. Weiss & Associates, *for Defendant*

HOLLAR, Judge.

## MEMORANDUM OPINION

(Filed: July 18, 2001)

This matter came before the Court on plaintiff's motion for summary judgment pursuant to Fed. R. Civ. P. 56, dated May 29, 1996. Defendant's response in opposition to plaintiff's motion was filed on September 5, 1997. Seven (7) years after the filing of the complaint, on February 9, 2001, the defendant filed a motion for leave of court to file a first amended answer, in order to assert the affirmative defense of the statute of frauds. On February 20, 2001, plaintiff filed a motion to amend its reply to defendant's November 18, 1993 counterclaim. One week later, on February 27, 2001, plaintiff filed an opposition to defendant's motion to amend its answer. Additionally, on March 16, 2001, plaintiff filed three (3) motions for partial summary judgment regarding

paragraphs 4, 5 and 6 of defendant's November 18, 1993 counterclaim. Thereafter, on March 27, 2001, defendant filed a motion for summary judgment based entirely on the statute of frauds, a defense asserted for the first time in its proposed amended answer of February 9, 2001. For the reasons that follow, the Court grants partial summary judgment in favor of plaintiff and denies defendant's motion for leave to amend its answer.[1]

## I. FACTS AND PROCEDURAL HISTORY

Mountaintop Limited Partnership (hereinafter "Mountaintop" or "plaintiff") leased two (2) commercial spaces to Colombian Emeralds International, Inc. d/b/a Parfum de Paris (hereinafter "Columbian Emeralds" or "defendant"). The initial duration of the leases was for a period of one (1) year, commencing on October 1, 1991 and expiring on September 30, 1992. James S. Armor, general partner of Mountaintop, and William Canfield, general manager of Columbian Emeralds, executed the original lease agreements. Incorporated into the leases was a provision for a two (2) year option to renew, exercisable by the defendant within sixty (60) days prior to the leases' expiration.[2] Also incorporated within the original leases was a holdover provision which would go into effect in the event Columbian Emeralds did not exercise the option to renew and did not vacate the premises upon the expiration of the leases. The holdover provision provided for a month to month tenancy at *triple* the base rent of the last month of the lease term plus additional rent in a sum equal to one twelfth of the preceding year's additional annual rent.[3]

---

[1] As a result of the denial of the motion for leave to amend its answer, there no longer exists a basis for defendant's motion for summary judgment.

[2] Exhibit C, an addendum to the original leases reads:

"Notwithstanding anything to the contrary in PP2 and 3, Tenant shall have an option to renew this lease for an additional TWO (2) YEAR period commencing OCTOBER 1, 1992 and ending SEPTEMBER 30, 1994. Tenant may exercise the option to renew *by giving the Landlord at least sixty (60) days written notice prior to the ending of the original lease.* There shall be no other options to renew. In all other respects, the Lease remains unchanged." (emphasis provided).

[3] Paragraph 30 of the original leases provided:

HOLDING OVER: It is hereby agreed that in the event of Tenant herein holding over after the expiration of this Lease, *and in the absence of a written agreement to*

On July 31, 1992, sixty one (61) days prior to the expiration of the one (1) year leases, R. Christopher Cooper, the financial controller for Columbia Emeralds faxed a letter to James Armor of Mountaintop which read:

> We hereby give notice of our desire to exercise the renewal option on the two leases at Mountaintop, St. Thomas, U.S. Virgin Islands. Mr. Bill Canfield is currently on vacation and will contact you next week upon his return. We attach the first page of each lease for ease of reference.

Thereafter, Columbian Emeralds remained at the location and operated the business at the Mountaintop premises for an additional fourteen (14) months. On or about September 25, 1993, approximately one year after the expiration of the one year leases and approximately one year prior to the expiration of the two year extension, Colombian Emeralds abruptly abandoned the premises. In its complaint, filed October 14, 1993, Mountaintop identified its damages to include $ 85,698.26 for lease "A" and $ 73,147.83 for lease "B," as the amount remaining for the unexpired portion of the respective leases, including nine percent (9%) interest per annum, expenses of $ 500.00, and indemnification of attorney's fees. The defendant filed an answer on November 18, 1993, without asserting any affirmative defenses.

On May 29, 1996, plaintiff filed its motion for summary judgment. Defendant, on September 5, 1997, filed an opposition to plaintiff's motion for summary judgment. After raising for the first time, on February 9, 2001, in its proposed amended answer, the affirmative defense of the statute of frauds, the defendant, on March 27, 2001, presumptuously filed a motion for summary judgment based on the affirmative defense asserted in the proposed answer.

## II. SUMMARY JUDGMENT STANDARD

"Rule 56 of the Federal Rules of Civil Procedure allows a court to grant summary judgment when the moving party demonstrates that there

---

*the contrary, thereafter the tenancy shall be month to month* with monthly rent due at triple the base rent of the last month of the Lease term plus additional rent in a sum equal to one twelfth of the preceding year's additional annual rent. (emphasis provided).

is no genuine issue of material fact, and that the evidence establishes the moving party's entitlement to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). Once the moving party has satisfied his initial burden, the non-moving party has the burden to establish that a genuine issue exists. *Jersey Central Power & Light Co. v. Lacey Township,* 772 F.2d 1103, 1109 (3d Cir. 1985). Further, the non-moving party cannot rest upon allegations in its pleadings or mere assertions unsupported by evidence. It must present actual evidence that creates a genuine issue of material fact. *Jackson v. University of Pittsburgh,* 826 F.2d 230, 233 (3d Cir. 1987) *(citing First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 20 L. Ed. 2d 569, 88 S. Ct. 1575 (1968)). All reasonable inferences are drawn in favor of the non-moving party. *See Pollock v. American Telephone & Telegraph Long Lines,* 794 F.2d 860, 864 (3d Cir. 1986) as cited in *Claxton v. Grand Union Supermarkets,* unpublished opinion (Civil No. 1990-143, D.V.I. 1992).

## III. DISCUSSION

In order to rule on the pending motions and resolve whether Columbian Emeralds breached its leases with Mountaintop when it vacated the premises on September 25, 1993, the following issues must be resolved: (1) whether the option to renew the lease(s) was self-executing; (2) whether Columbian Emeralds is liable for the acts of its agents; (3) whether Columbian Emeralds is barred by the parole evidence rule from relying upon an oral representation when all written correspondence is to the contrary; (4) whether a one year lease can be orally modified *after* an option to renew the lease for two years has been exercised; and (5) whether it is an abuse of discretion for the Court to deny Columbian Emeralds' motion for leave to amend its answer to add an affirmative defense.

### A. An Option To Renew A Lease Is Self-Executing

■ The defendant asserts that the option to renew the leases was subject to acceptance by the plaintiff, however that contention has no merit because an option to renew is self-executing. *See, e.g., Billman v. V.I. Equities Corp.,* 743 F.2d 1021 (3d Cir. 1954) (lessor waived right to stop sublessee from exercising option to renew when lessor failed to

limit the option to the lessee); *Estate Carlton, Inc. v. Pringle,* 1975 U.S. Dist. LEXIS 5577, 11 V.I. 387 (D.V.I. 1978) (lessor estopped from not honoring the option to renew which was signed by only the wife and not the husband even though both were named as lessees); *Moolenaar v. Co-Build Companies, Inc.,* 354 F. Supp. 980, 9 V.I. 348 (D.V.I. 1973) (new owners of land were subject to the lessee's rights to renew a five year option contained in a pre-existing lease).

Generally, when an option is incorporated into a lease, it is done for the benefit of the lessee to guarantee the right to possession beyond the lease term, if desired. This is particularly desireable in a commercial setting because it is important to maintain a designated and established business site, without having to relocate every year. Given an option to renew a lease, a lessor is without authority to reject an otherwise timely exercise by a lessee to renew a lease.

In defendant's 1993 answer and its 1997 opposition to plaintiff's summary judgment motion, it was alleged that the 1991-1992 leases were never renewed. In support of that assertion, defendant surprisingly referred to an April 19, 1996 deposition of William Canfield, the General Manager of Columbian Emeralds, where Canfield testified that the defendant *did* exercise the option to renew but Jim Armor did not accept it. The record, in sharp contrast, contains several letters from Mountaintop, dated as early as February 1993, acknowledging the defendant's exercise of the option(s) to renew. Thus, no factual or legal significance may be given to defendant's subjective or convenient belief that the option was never "accepted."

The defendant's insistence that a month to month tenancy was in effect from October 1992 - September 1993 is not only ludicrous, but without merit. Had the option not been timely exercised, the defendant would have been subject to the holdover provision as early as October 1, 1992, which would have resulted in payment of triple the base rent upon expiration of the original lease commencing October 1, 1992. Columbian Emeralds has never paid triple the base rent on either lease from October 1, 1992 to September 30, 1993 and Mountaintop has never charged or assessed Columbian Emeralds triple the base rent following the expiration of the original lease. In fact, from March 1993 through September 1993, Colombian Emeralds made monthly payments in amounts less than what was required under the original leases. Justification for paying rent in an amount less than triple the base rent

could have only been derived from a timely exercise of the option to renew. Even if there were *subsequent* attempts to revise the terms of the lease, they would not affect the validity of the option as exercised, resulting in the renewal or extension of the original lease.

## B. Columbian Emeralds International, Inc. Is Liable For The Acts Of Its Agents

██ ██ Defendant argues that the option was not renewed because the financial controller,[4] not the general manager, exercised the option and therefore the option was improperly executed. Of course, there is no factual or legal basis for this argument. It is well settled that a principal is liable in contract for the authorized actions of his agent. *Restatement (Second) of Agency* §§ 140, 186 (1958).[5] *Lempert v. Singer*, 26 V.I. 326, 766 F. Supp. 1356, 1366 (D.V.I. 1993). Defendant, Columbian Emeralds is the principal business entity in this case. William Canfield, as general manager, and R. Christopher Cooper, as financial controller, were acting as agents of Columbia Emeralds. Even assuming arguendo, that R. Christopher Cooper lacked the authority to execute the option and/or the act was unauthorized, under the doctrine of ratification, a principal may ratify the agent's prior unauthorized acts, provided the principal has full knowledge of those acts. *Restatement (Second) Of Agency* §§ 82-104 (1958). Clearly, the defendant had knowledge that the option was renewed and acknowledged the same in several letters. Through a memo dated February 25, 1993, Bob Cockayne, the resident agent for Columbian Emeralds, conceded that defendant executed the option to renew when he wrote: "we received no confirmation from you at the time regarding our lease option being accepted." James Armor, a general partner of Mountaintop, by letter dated March 1, 1993, appropriately responded that no acceptance of the option was required because the

---

[4] The option to renew the leases was faxed on Columbian Emeralds letterhead and signed by R. Christoper Cooper, financial controller, notwithstanding the fact that Adanac, a subsidiary of defendant, is also listed in much smaller print on that letterhead.

[5] "The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." V.I. CODE ANN. tit. 1, § 4 (1995).

option was self-executing. Thus, the lease was automatically extended for two years. Furthermore, William Canfield acknowledged in his deposition of April 19, 1996, that R. Christopher Cooper of Columbian Emeralds exercised the option to renew.

■ Not only may a principal ratify an unauthorized act of an agent by either affirming or accepting the benefits of those unauthorized acts, with knowledge, *Restatement (Second) of Agency* §§ 82-104 (1958), but affirmance may also be expressed by the principal's silence. In this case, the lease expired on September 30, 1992. *Id.* Pursuant to an addendum to the original leases, if defendant wanted to extend the lease beyond September 30, 1992, the plain language of the addendum provided that the "tenant may exercise the option to renew by giving the landlord at least sixty (60) days written notice prior to the ending of the original lease." Accordingly, on July 31, 1992, sixty (60) days before the expiration of the original lease, R. Christopher Cooper, on Columbian Emeralds' letterhead, faxed a notice to Mountaintop, exercising the option to renew both leases. Columbian Emeralds remained silent and provided no evidence or protest that R. Christopher Cooper, its financial controller, exceeded his authority when he transmitted the notice exercising the option to renew on behalf of Columbian Emeralds. Moreover, defendant continued operating its business after the expiration of the original lease and paid no additional rent. Based upon the undisputed facts, the exercise of the option by R. Christopher Cooper was ratified by operation of law by Columbian Emeralds and therefore has full force and effect.

## C. Columbia Emeralds Is Barred By The Parol Evidence Rule From Relying Upon An Oral Representation When All Written Correspondence Is To The Contrary

When examining a contract, the Court is to interpret the contracting parties' intent as objectively manifested by them and make a preliminary inquiry as to whether the contract is ambiguous. *Hullett v. Towers, Perrin, Forster & Crosby, Inc.,* 38 F.3d 107, 111 (3d Cir. 1994) as cited in *Sunshine Shopping Center v. Kmart, 42 V.I. 397,* 85 F. Supp. 2d 537 (D.V.I. 2000). A contract provision is considered ambiguous if it is susceptible to two reasonable alternative interpretations. *Id.* Disputes involving the interpretation of unambiguous contracts are resolvable as a matter of law and are, therefore, appropriate cases for summary

201

judgment. *Par-Knit Mills v. Stockbridge Fabrics Co.,* 636 F.2d 51, 54 (3d Cir. 1980). A fundamental principle of contract law is that where several instruments executed contemporaneously or at different times, pertain to the same transaction, they will be read together although they do not expressly refer to each other. 17 C.J.S. *Contracts* § 298; *Wenk v. Webster,* 9 V.I. 35 (D.V.I. 1971). Parol evidence should not be allowed when the terms of a contract are clear and unambiguous. *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.,* 40 F.3d 1416, 1427-28 (3d Cir. 1994); *Langer v. Monarch Life Ins. Co.,* 879 F.2d 75, 81 n.8 (3d Cir. 1989).

██ The contract terms of the lease and the option to renew in the case *sub judice* are unambiguous. The lease is clear on its face, and the option and its terms are explicit. When a lessee exercises an option to renew a lease, that renewal leaves the existing lease intact and is a mere continuation of the lease. *Spodek v. U.S.,* 26 F. Supp. 2d 750 (E.D. Pa. 1998). The option to renew both leases was exercised timely in accordance with the addendum of the original lease on July 31, 1992 by R. Christopher Cooper. The letter to plaintiff unequivocally states that "we hereby give notice of our desire to exercise the renewal option on the two leases at Mountaintop." The option to renew did not contemplate any modification of the lease, it merely extended the term of the original lease for two (2) years. An oral modification of a lease is invalid if both the original and remaining periods exceed the period specified in the controlling statute of frauds. *Restatement (Second) Of Property* § 2.4 (1977). Even if the remaining period was month to month, pursuant to the statute of frauds, any alleged oral modification of the leases are invalid because the one year lease plus the two year option contemplates a tenancy for more than (1) year. The lease, the option to renew, the notice of exercising the option and the correspondence between the parties pertaining to the lease transactions are clear and unambiguous. Therefore, the defendant is barred by the parol evidence rule from relying upon on an oral contract which purportedly modified the lease to a month to month tenancy, when numerous unambiguous writings indicate otherwise.

## D. A Written One Year Lease Can Not Be Orally Modified After An Option To Renew The Lease For Two Years Has Been Exercised Without Running Afoul of the Statute of Frauds ·

■ Any interest in property orally created, transferred or assigned for a period greater than one year is void and unenforceable under the statute of frauds. V.I. Code Ann. tit. 28, § 241 (1996). Therefore, a lease for a period of exactly one year, whether written or oral, is outside the scope of the statute of frauds and is enforceable. *Melendez v. Boschulte,* 35 V.I. 192, 950 F. Supp. 114 (D.V.I. 1997). While the initial one (1) year leases in this case could have been oral and still enforceable, the exercise to renew the lease(s) for two (2) years was required by the statute of frauds to be in writing. The defendant claims that there was an oral modification of the original written lease, resulting in a month to month tenancy. The alleged modification, however, took place *after* defendant exercised the option to renew the lease for two (2) years. Hence, any oral modification is rendered void as violative of the statute of frauds.

## E. It Is Not An Abuse Of Discretion For The Court To Deny Columbian Emeralds' Motion To Amend Its Answer

■ "In pleading to a preceding pleading, a party shall set forth affirmatively the ... statute of frauds." Fed. R. Civ. P.8(c). The statute of [frauds] is an affirmative defense that must be asserted in a party's responsive pleading at the earliest possible moment, and is waived if not pleaded. *Harris v. V.I. Housing Authority,* 27 V.I. 61, 63 (Terr. Ct. 1992). Furthermore, Rule 8(c), by requiring defendant to plead his defense or risk waiving it, also serves the purpose of giving the opposing party notice of the defense and an opportunity to argue why his claim should not be barred. 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice And Procedure* § 1270 (2d. 1990); *Blonder-Tongue Labs.; Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971). Even if defendant fails to assert an affirmative defense in its answer, it may amend the pleading by leave of court, which shall be freely given when justice so requires. Fed. R. Civ. P. 15(a); *Harris* at 64, *supra.*

■ The decision whether to grant or to deny a motion for leave to amend rests within the sound discretion of the district court. *Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644 (3d Cir. 1998); *Howze v. Jones & Laughlin Steel Corp.,* 750 F.2d 1208, 1212 (3d Cir. 1984).

However, "leave to amend should be freely given *in the absence of any* apparent or declared reasons such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing [*19] party by virtue of allowance of the amendment, and futility of amendment." *Foman v. Davis,* 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *Averbach v. Rival Manufacturing Company,* 879 F.2d 1196 (3d Cir. 1989); *see also, Lorenz v. CSX Corp.,* 1 F.3d 1406, 1414 (3d Cir. 1993) (denying motion for leave to amend pleading, in part, because of unreasonable delay, where most of the facts were available to the party at the time the pleading was filed).

Because the raising of the affirmative defense of the statute of frauds, at this juncture of the proceedings, is not only untimely and prejudicial to the plaintiff but also made in bad faith and futile, the Court will deny the defendant's motion also to amend its answer.

### 1. Defendant's Motion To Amend Is Untimely

The complaint in this matter was filed on October 14, 1993. The defendant filed its answer on November 18, 1993. Defendant produced documents dated from as early as February 1993 from Bob Cockayne of Columbian Emeralds to James Armor of Mountaintop stating that "we received no confirmation from you at the time regarding our lease option [of July 31, 1992] being accepted.... In any event, we have been operating on the basis of a month to month agreement for the past several months." In response, James Armor, on March 1, 1993, stated that "The renewal clauses do not require the landlord to confirm the renewal notice, nor do the clauses provide the landlord the right to reject the tenant's sole right to exercise the options. Once exercised, the lease is automatically extended for two years."

Thereafter, the correspondence between the parties focused mainly on negotiations for rent adjustments because of a decrease in traffic which resulted in dwindling sales for Columbian Emeralds. Then, on September 1993, approximately one year after the expiration of the original leases and one year prior to the expiration of the two year option to renew, Colombian Emeralds abandoned the premises.

In its September 5, 1997 opposition to plaintiff's motion for summary judgment, the defendant argued that: (1) the option to renew the leases were rejected by Mountaintop; (2) the original leases were never renewed

because William Canfield did not personally execute the option; (3) Mountaintop is estopped from denying the oral modification to a month-to-month tenancy; and (4) the modification of the lease to a month to month tenancy does not require a writing under the Virgin Islands Statute of Frauds because the tenancies were for less than one year.

On February 9, 2001, seven (7) years after the commencement of this matter, defendant filed a motion for leave to amend its answer. The proposed amended answer of February 9, 2001, asserts for the first time, that the option had never been exercised because as a matter of law, R. Christopher Cooper, did not have "written authority" to act on behalf of Columbian Emeralds, pursuant to the Virgin Islands Statute of Frauds, codified in V.I. Code Ann. tit. 28, § 242.

██ ██ Although delay alone may not always warrant denial of a motion to amend a pleading, leave may be justifiably withheld if the moving party knew the facts on which the claim or defense sought to be added were based at the time the original pleading was filed and there appears to be no excuse for failure to plead them. Fed.R.Civ.P. 15(a); *Interstate Realty Management v. Ambrose*, 20 V.I. 21 (Terr. Ct. 1983). In *Lorenz* at 1414, the Court held that the plaintiff's proposed amendment, filed three years after the complaint, was based on undue delay since the facts were available when the case was filed and the party had numerous opportunities to correct any deficiencies in its claim. *Lorenz* at 1414. The seven year delay in raising the affirmative defense of the statute of frauds in the case *sub judice* is even more egregious.

As in *Lorenz*, the statute of frauds, as an affirmative defense, could and should have been raised in defendant's 1993 answer. Whether its agent acted pursuant to "written authority" was a fact known to defendants as early as July 31, 1992. Further, the issue of undue delay with regard to a motion to amend "requires that we focus on the movant's reasons for not amending sooner." *Cureton v. NCAA*, 252 F.3d 267, 2001 U.S. App. LEXIS 9326 (3d Cir. May 16, 2001). Although Columbian Emeralds conspicuously omits the reason for its delay, the Court can only infer that the amendment was made as a desperate ploy to keep its dying case alive. There is simply no excuse for the defendant's failure to raise from the inception of this case the statute of frauds defense, on the grounds now sought.

## 2. Raising The Statute of Frauds After Acknowledging Its Exercise Of An Option To Renew The Lease(s) Discloses Bad Faith On Defendant's Behalf

 While it is true that leave to amend a pleading should be liberally granted when justice so requires, justice is clearly not served and does not require the Court to grant Columbian Emeralds' leave to file an amended answer to assert the affirmative defense seven (7) years after it was waived. As stated *infra* IIIE, if an affirmative defense is not asserted in the responsive pleadings at the earliest possible moment, it is deemed waived. The statute of frauds is waived if the defendant admits to the existence of a contract in the pleadings or testimony. *Flight Systems v. Electronic Data Systems, Corp.*, 112 F.3d 124 at 124-127 (3d Cir. 1997). In the present case under consideration, the defendant has waived the affirmative defense in both respects, by failing to assert the affirmative defense in its responsive pleadings and by representations made by the defendant through its authorized agents admitting to the existence of the exercise of the option to renew the lease.

Separate and apart from the theory of waiver is the theory of estoppel. The doctrine of estoppel applies when "a person who is not otherwise liable as a party to a transaction purported to be done on his account, is nevertheless subject to liability to persons who have changed their positions because of their belief that the transaction was entered into by or for him if (a) he intentionally or carelessly cause such belief, or (b) knowing of such belief and that others might change their positions because of it, he did not take reasonable steps to notify them of the facts. *Restatement (Second) of Agency* § 8B(1) (1958). In this case, Columbian Emeralds not only caused Mountaintop to believe that those acting on its behalf were authorized to do so but also made no effort to notify Mountaintop that the option was erroneously exercised without proper authority. Instead, Columbian Emeralds, quietly relied upon and benefited from the exercise of the option by escaping the triple base rent clause mandated by the holdover provision. Consequently, it would indeed be inequitable and unjust for the Court to exercise its discretion by permitting the defendant the opportunity to have the best of two worlds.

Under yet another theory of estoppel by misrepresentation, a principal may incur liability by representing that one who has no authority to do an act or to make a contract for him, actually does have that authority. *Restatement (Second) of Agency* § 8B cmt. b (1958). According to the

206

complaint herein, the defendant is alleged to have breached the option to renew the lease. If Cooper, in fact, acted without authority, that should have been raised immediately. Even if the defense counsel did not quote the statute of frauds, at the very least, when speaking to his client as early as 1993, the issue of "authority" would have had to surface prior to 2001. Of course, the issue was not raised previously because the facts do not support that there was a lack of authority to exercise the option to renew. The attempt now to raise the statute of frauds is not only dilatory but exhibits bad faith.

The defendant is also estopped from denying R. Christopher Cooper and William Canfield's agency on yet another principle of estoppel. "When a writing is required to authorize an agent to sell land and the agent was authorized only orally, but the principal tells the third person that the agent was authorized, there is no apparent authority, but the principal is estopped from denying its. *Restatement (Second) of Agency* §§ 8, 31 (1958). The lease agreement in this case involves the renting of premises (land), lesser interest right than buying or selling land, but nonetheless one that deals with real property. Since Columbian Emeralds has never contended that R. Christophe Cooper was unauthorized to execute the option to renew and Bob Cockayne, Columbian Emerald general manager, wrote to Mountaintop acknowledging the exercise of the option, Columbian Emeralds is estopped from now denying that R. Christopher Cooper was unauthorized.

In regards to estoppel and denial of an agent's authorization even when required in writing, § 31 of the *Restatement (Second) of Agency* is directly on point. It reads:

> (1) A person who manifests to a third person that he has authorized an agent by instrument under seal or by other formality is subject to liability to such third person as if the authorization had been by such means, if the third person changes his position in reasonable reliance on the manifestation.
>
> (2) If a principal entrusts to an agent an executed document containing blanks, and the agent fills the blanks without authority and delivers the document to a third person, who changes his position in reliance thereon without notice that the principal did not fill the blanks before execution of the instrument, the principal is subject to liability to the third person as if the instrument had been

completed by the principal or by an agent properly authorized to fill in the blanks. *Restatement (Second) of Agency* § 31 (1958).

Mountaintop relied on the validity of the executed option or it would have assessed defendant rent under the holdover provision in the lease. Mountaintop had no reason to believe that R. Christopher Cooper was unauthorized to act, because other agents of Columbian Emeralds represented to Mountaintop that the option to renew had in fact been exercised. Further, pursuant to *Restatement (Second) of Agency* § 31(2) (1958), R. Christopher Cooper faxed a timely renewal notice on Columbian Emeralds letterhead together with copies of the applicable pages of the lease which were analogous to "filling in the blanks" to assert Columbian Emeralds' desire to exercise the options to renew their leases at Mountaintop. For all intents and purposes, and all other indications, this was done at the direction of, and with the blessing of, Columbian Emeralds.

### 3. If An Amended Answer Is Allowed, Mountaintop Would Be Barred By The Statute of Limitations To Amend Its Complaint To Allege In The Alternative, Treble Damages Pursuant To The Holdover Provision of the Leases, Thus Resulting in Undue Prejudice to Mountaintop

 Prejudice to the nonmoving party is the touchstone for the denial of an amendment. *Lorenz CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993); *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978). To allow the defendant to amend its answer at this stage of the proceedings would cause severe prejudice to Mountaintop. The amendment would result in additional discovery, cost and preparation to defend against new facts supporting new theories. *Cureton* at 13. As reiterated ad nauseum, this case has been pending for over seven years. If the Court allowed the defendant leave to amend its answer, equity dictates that Mountaintop should likewise be allowed to respond by filing leave to amend its complaint to seek triple base rent under the holdover provision of the leases. Because the breach occurred nine (9) years ago, and the original complaint never relied on the holdover provision, it is unlikely that Mountaintop would be allowed to "relate back" and therefore, its amendment would be disallowed. Such a result would be highly prejudicial because the proposed amended answer changes both the legal and factual basis of Mountaintop's claim. *Cornell*

*& Co.* at 825-826. Accordingly, the Court is unwilling to venture down a path that may result in such undue prejudice and inequity to the plaintiff.

## 4. Defendant's Amended Answer Would Be Futile

 Even if the defendant were granted leave to amend its answer to invoke the statute of frauds, the assertion of that affirmative defense would be futile. A lease made invalid by the statute of frauds will be given no effect *unless* the parties to the lease undertake substantial performance which is clearly referrable to the terms of the lease, in which case the lease is given full effect. *Restatement (Second) Of Property* § 2.3(3) (1977). In this case, the parties substantially performed the covenants in the lease, including the option to renew. In further substantiation of the exercise of the option, the defendant did not pay rent pursuant to the holdover provision. Therefore, even if the amended answer were allowed, the lease and the option, as exercised, would be given full effect because the parties substantially performed under the lease.

Moreover, Columbian Emeralds' attempt to hang its hat on the statute of frauds to nullify the acts of its agents will not be permitted as it is in contravention to the objective of the statute of frauds. The purpose of the statute of frauds is to shield persons with interests in land from being deprived of those interests by perjury, not to arm contracting parties with a sword they may use to escape bargains they rue. *Flight Systems* at 127. In *Flight Systems*, the Court held, that if the defendant admits under oath that a contract was formed, the purposes of the statute of frauds are served, and the contract will be afforded full legal effect. *Id.* In this case the defendant admitted in its answers to plaintiff's interrogatories that the option was exercised. Furthermore, all of the sworn testimony of Columbian Emeralds' employees and its 30(b)(6)[6] representative admit the same. The defendant, may not come, seven years later, and represent to this Court that what truly happened, did not happen at all. Its attempt to use the statute as a sword to escape the bargain they made, will not be condoned.

---

[6] FED. R. CIV. P. 30(b)(6).

## 5. The Facts in the Case Law Relied Upon By Defendant Is Distinguishable From the Case At Bar

The defendant's reliance upon *Gibbons v. United Corporation*, 1988 U.S. Dist. LEXIS 18557 (D.V.I. 1988) as well as *Downing v. Fortuna Bay Estates, Inc.*, 17 V.I. 20 (Terr. Ct. 1980) to permit the late affirmative defense of no written authorization is misplaced because: (1) in neither case was there an invalid lease or contract for the sale of land made valid because of performance by the parties as described in the *Restatement (Second) of Property* § 2.3 (1977); (2) in both Gibbons and Downing, the statute of frauds defense was timely raised; and (3) the two agreements in Gibbons were oral.

Additionally, in *Downing*, the Court found that defendant's agent was not acting pursuant to written or apparent authority[7] and therefore found that the plaintiff's claim was barred by the statute of frauds. In this case, Columbian Emeralds' agents may not have been acting pursuant to written authority, but they acted pursuant to actual, albeit unwritten (parole) authority. Actual authority has been defined as the authority that the principal expressly or explicitly gave the agent. *Downing* at 26; *U.S. v. Martinez*, 613 F.2d 473 (3d Cir. 1980). The defendant herein admitted on several occasions that it exercised the options to renew the leases. The defendant never contended that R. Christopher Cooper acted beyond his authority by executing the options to renew. In fact, on February 8, 1994, in responding to plaintiff's interrogatories regarding the fax from R. Christopher Cooper, the defendant replied:

> This letter was written by *Columbian Emeralds' financial controller* as a clerical or administrative matter in the absence of the then general manager, William Canfield. The referenced leases would have been noted on the calendar based on their renewal dates on a 'tickler' system. Notice was given by this letter to preserve CEI's option to renew the two leases. [Emphasis added].

Mountaintop had reason to believe that R. Christopher Cooper was acting pursuant to apparent authority because the fax was sent on

---

[7] "The power of an agent not authorized under seal to bind the principal to a third person to whom the principal manifests that the agent is properly authorized is not based upon apparent authority...If the manifestation to the third person is under seal, the agent has apparent authority; if it is by parole, this rule stated in this subsection is applicable." *Downing* at 26.

defendant's letterhead, and it was copied to William Canfield. Most importantly, defendant relied upon the validity of the exercise of the option(s) by never paying triple the base rent on either lease from October 1, 1992 to September 30, 1993, as would have been required under the holdover provision. At no time has the defendant argued that the option to renew was not exercised, its position before the Court has been that the option should not be enforced because Mountaintop never "agreed to accept it."

## IV. CONCLUSION

As enunciated by the United States Supreme Court in *Foman*, "leave to amend should be freely given in the absence of any apparent or declared reasons such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment. *Foman* at 230. Although only one reason is needed to warrant denial of defendant's motion, the Court finds that the defendant's motion to amend its answer is not only untimely, but made in bad faith, and if allowed would be unduly prejudicial to plaintiff and futile. Accordingly, the defendant's motion for leave to file an amended answer to assert the affirmative defense of the statute of frauds is denied.

In the absence of the amended answer asserting the affirmative defense of the statute of frauds, there exists no genuine issue of material fact in dispute regarding Columbian Emeralds' breach of its lease as extended with Mountaintop. Accordingly, the plaintiff's motion for summary judgment is granted in part, as to liability.

## ACTION FOR RENT

### ORDER

This matter came before the Court on plaintiff's motion for summary judgment. For the reasons set forth in the Memorandum Opinion of even date, it is hereby

ORDERED, that the plaintiff's motion for summary judgment is GRANTED IN PART; it is further

ORDERED, that defendant's motion to amend answer is DENIED; it is further

ORDERED, that any issues not resolved by the accompanying Memorandum Opinion shall be heard at a status hearing on Tuesday, July 31, 2001 at 2:00 p.m.; it is further

ORDERED, that a hearing on damages will be scheduled after the status hearing; and it is further

ORDERED, that a copy of this Order be directed to counsel of record and served on the defendant.