NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 19-1951

———————

CKSJB HOLDINGS LLC,
Successor in Interest to PointSource, LLC,

Appellant

v.

EPAM SYSTEMS, INC.

———————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-18-cv-02173)
District Judge: Honorable Gerald J. Pappert

———————

Submitted under Third Circuit LAR 34.1(a)
On December 10, 2019

Before: RESTREPO, ROTH and FISHER, Circuit Judges

(Opinion filed December 2, 2020)

———————

OPINION[*]

———————

ROTH, Circuit Judge

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

CKSJB Holdings, LLC, appeals the dismissal of its amended complaint against EPAM Systems, Inc., alleging breach of a contractual duty to negotiate in good faith and promissory estoppel. CKSJB, as successor in interest to PointSource, LLC, brought this action after negotiations with EPAM for the potential acquisition of PointSource broke down. For the reasons that follow, we hold that there is no enforceable contract to support a duty to negotiate in good faith and no inducement to sustain a promissory estoppel claim. We will affirm the order of the District Court.

I.[1]

In 2016, PointSource began discussions with various companies about acquiring PointSource's business. EPAM was one of the companies that showed interest. As discussions progressed, EPAM sent a draft indication of interest letter (IOI) to PointSource. The draft IOI set forth EPAM's estimated valuation of PointSource and a proposed transaction structure. After PointSource received the draft IOI, EPAM's President and Chief Executive Officer verbally agreed to negotiate in good faith to complete the deal described in the draft IOI. The parties also verbally agreed to change some of the proposed terms contained in the IOI. PointSource returned a redlined version of the IOI, reflecting those changes. However, no agreement to negotiate in good faith was included in the changes. The executed version of the IOI included a broad disclaimer disavowing any obligation of the parties:

NON-BINDING AGREEMENT

---

[1] Because we write primarily for the parties, we only discuss the facts and proceedings to the extent necessary for resolution of this case.

2

> This proposal does not constitute and *will not give rise to any legally binding obligation* whatsoever on the part of EPAM. Moreover, except as expressly provided in any binding written agreement that EPAM and [PointSource] may enter into in the future*, no past, present or future action*, course of conduct, or failure to act relating to the transaction described herein and/or this proposal or *relating to the negotiation of the terms of the transaction* contemplated herein and/or by this proposal *will give rise to or serve as the basis for any obligation* or other liability on the part of such entities or any of their respective affiliates.[2]

The IOI stated that EPAM would provide a "definitive list" of conditions to closing upon completing its due diligence.[3] It also stated that "as [EPAM] move[s] forward, [EPAM] may require a commitment of exclusivity by [PointSource] . . . through the date of execution of the Purchase Agreement."[4] The IOI proposed weekly calls between the companies to "discuss open items and progress" and stated that EPAM "would work diligently with [its] representatives and [PointSource]'s team and representatives to close the transaction in an expedient manner."[5]

PointSource "agree[d] to" and "accept[ed]" the IOI's terms.[6] Immediately after receiving the executed IOI, PointSource informed EPAM that "[a]lthough the agreement [did not] call for immediate exclusivity, [PointSource] intend[ed] to move forward solely with EPAM" and was terminating discussions with other companies.[7] Throughout the next few months, the parties continued participating in discussions and negotiating the

---

[2] JA81, JA82 (emphases added).
[3] JA79.
[4] JA81.
[5] JA81.
[6] JA63 ¶ 126.
[7] JA50 ¶ 41.

terms of a draft purchase agreement. Then abruptly EPAM informed PointSource that it was terminating its acquisition of the company, citing a "change[] [in] its priorities."[8]

PointSource assigned its claims against EPAM to CKSJB and was subsequently acquired by Globant SA. CKSJB brought this action against EPAM for (1) breach of a contractual duty to negotiate in good faith, (2) promissory estoppel, and (3) breach of confidentiality. CKSJB appeals the District Court's dismissal of its first two causes of action.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(a). We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a dismissal of a complaint for failure to state a claim.[9] Interpretations of contractual language present questions of law that we review de novo.[10] Dismissal may only be granted if, "accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility."[11] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[12]

## III.

### A. Choice of Law

---

[8] JA61 ¶ 113.

[9] *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014).

[10] *Pellaton v. Bank of New York*, 592 A.2d 473, 478 (Del. 1991); *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 430 (Pa. 2001).

[11] *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

CKSJB contends that the District Court erred by applying Pennsylvania law and not the law of Delaware. However, CKSJB points to no disparity between the two states' laws. We find no conflict between the laws of the two states relevant to our analysis. Delaware recognizes a cause of action for breach of an agreement to negotiate in good faith,[13] and we have predicted that Pennsylvania would do the same.[14] Both states recognize the same elements for claims of promissory estoppel.[15] Therefore, it is not necessary to perform a choice of law analysis.

B. Breach of Agreement to Negotiate in Good Faith

Plaintiff alleges that the parties agreed to negotiate in good faith and that EPAM breached that agreement when it "unilaterally and arbitrarily" terminated negotiations.[16] Agreements to negotiate in good faith are treated just like any other contractual obligation.[17] An enforceable contract requires (1) a manifestation of mutual assent to be bound, (2) sufficiently definite terms, and (3) exchange of legal consideration.[18] To survive a motion to dismiss, a plaintiff must allege sufficient facts to show the existence of an enforceable contract and that it was breached by bad faith.[19]

---

[13] *See SIGA Techs., Inc. v. PharmAthene, Inc.*, 132 A.3d 1108, 1110 (Del. 2015).
[14] *Channel Home Ctrs. v. Grossman*, 795 F.2d 291, 299 (3d Cir. 1986).
[15] *Compare SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 347-48 (Del. 2013), *with Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000).
[16] JA60 ¶ 111.
[17] *See Flight Sys. v. Electronic Data Sys. Corp.*, 112 F.3d 124, 130 (3d Cir. 1997); *Channel Home Ctrs.*, 795 F.2d at 299; *SIGA Techs., Inc.*, 67 A.3d at 343-44.
[18] *Flight Sys.*, 112 F.3d at 130; *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1212-13 (Del. 2018).
[19] *See Flight Sys.*, 112 F.3d at 130; *SIGA Techs.*, 67 A.3d at 346-47.

5

CKSJB's claim does not get past the first element.[20]  CKSJB argues that, although the IOI does not contain a talismanic or explicit invocation of an intent to negotiate in good faith, the statement that EPAM would work diligently with PointSource to close the transaction in an expedient manner constitutes an express agreement to negotiate in good faith.  We disagree.  As the District Court found, this statement is merely "optimistic language."[21]  Unlike the "unequivocal promise" to withdraw property from the market and "only negotiate the . . . transaction to completion" at issue in *Channel Home Centers*,[22] the IOI's use of optimistic language in no way confers an obligation to negotiate in good faith.

CKSJB alternatively argues that this statement is ambiguous and relies on the parties' previous oral agreement to clarify this alleged ambiguity.  The parol evidence rule, however, limits the use of extrinsic evidence, such as a prior oral agreement, to occasions where a written contract's language is ambiguous.[23]  A contract is only ambiguous when the provisions in controversy are reasonably susceptible to different interpretations.[24]  Absent an ambiguity, courts will enforce the plain meaning of an agreement.[25]  We do not read the above use of optimistic language as reasonably

---

[20] We make no determination regarding the other elements required of a contract or whether the amended complaint sufficiently alleges bad faith conduct.
[21] JA32.
[22] 795 F.2d at 293, 299-300.
[23] *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997); *Murphy*, 777 A.2d at 429.
[24] *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 288 (Del. 2001).
[25] *Murphy*, 777 A.2d at 430; *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1195-96 (Del. 1992).

6

susceptible to any other interpretation.  Moreover, consideration of the oral agreement to negotiate in good faith would directly contradict the unequivocal disclaimer found in the IOI which denies the existence of any obligation based on past action "relating to the negotiation of the terms of the transaction"[26] and negates any inference that the parties manifested an assent to be bound through an earlier oral agreement.[27]

CKSJB also argues that EPAM's course of conduct after executing the IOI establishes an intent to be bound to negotiate in good faith.  Plaintiff alleges that "[i]n all ways, EPAM continued to manifest and communicate to PointSource its intention to abide by the parties' mutual agreement to negotiate diligently and in good faith."[28] Although course of conduct may be relevant to determining the parties' intentions,[29] the allegations contained in the amended complaint are insufficient to transform EPAM's due diligence and continued negotiations into an enforceable contract.[30]

## C.  Promissory Estoppel

CKSJB contends that its promissory estoppel claim should not have been dismissed.  "In order to maintain an action in promissory estoppel, the aggrieved party must show that 1) the promisor made a promise that he should have reasonably expected

---

[26] JA81, JA82.

[27] To the extent that CKSJB alleges explicit agreements to negotiate in good faith *after* execution of the IOI, we will not consider such evidence as CKSJB does not allege that such subsequent agreements modified the terms of the IOI or were accompanied by any other elements required of a contract modification. *See Continental Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1230 (Del. Ch. Ct. 2000) (citing *Reeder v. Sanford School, Inc.*, 397 A.2d 139, 141 (Del. Super. Ct. 1979)).

[28] JA50 ¶ 44.

[29] *See Flight Sys.*, 112 F.3d at 131.

[30] *See U.S.A. Machinery Corp. v. CSC Ltd.*, 184 F.3d 257, 264 (3d Cir. 1999).

to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise."[31]  Again, CKSJB cannot make it past the first element.

CKSJB relies on EPAM's promise to negotiate in good faith, assertions to "treat the deal as done," and other assurances to support its cause of action.[32]  CKSJB alleges that EPAM's actions caused PointSource to "commit[] to negotiate exclusively with EPAM, reject[] purchase offers from other companies, . . . devote[] substantial time, effort, and resources to the due diligence and contracting processes,"[33] integrate systems and personnel, and "structure[] its business plan . . . based on the anticipated acquisition."[34]  None of EPAM's alleged representations can be said to have reasonably induced PointSource to behave in this manner.[35]  We agree with the District Court that PointSource gratuitously took these measures and that EPAM had no responsibility for the consequences of PointSource's own strategy.

IV.

For the foregoing reasons, we will affirm the order of the District Court.

---

[31] *Crouse*, 745 A.2d at 610; *accord SIGA Techs.*, 67 A.3d at 347-48.
[32] JA65-66 ¶¶ 139-144.
[33] JA65 ¶¶ 139, 140.
[34] JA66 ¶ 144.
[35] *See CMR D.N. Corp. & Marina Towers Ltd. v. City of Phila.*, 703 F.3d 612 (3d Cir. 2013) (quoting 3 Corbin on Contracts § 8.9, at 29-30 (Rev. Ed. 1996)) ("[I]t is a basic tenet of contract law that 'mere expression[s] of intention, hope, desire, or opinion, which shows no real commitment, cannot be expected to induce reliance.'"); *Kaufman v. Mellon Nat'l Bank & Trust Co.*, 366 F.2d 326, 332 (3d Cir. 1966) ("Absent the element of inducement the rule of promissory estoppel is not applicable.").